[Cite as *State v. Stringer*, 2013-Ohio-988.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2012-04-095 |
| | : | O P I N I O N |
| - vs - | | 3/18/2013 |
| | : | |
| RONALD HOLLIDAY STRINGER, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-11-1806

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Fl., Hamilton, Ohio 45011, for plaintiff-appellee

Neal D. Schuett, 121 West High Street, Oxford, Ohio 45056, for defendant-appellant

**PIPER, J.**

{¶ 1}   Defendant-appellant, Ronald Stringer, appeals his conviction and sentence in the Butler County Court of Common Pleas for one count of possession of cocaine with an accompanying major drug offender specification.

{¶ 2}   The Hamilton Police Department's vice unit began an investigation of Stringer when they uncovered information that Stringer was in the business of selling drugs. The investigation progressed further when a confidential informant told police that he could

arrange a drug buy from Stringer. As part of the police investigation, the informant called Stringer and set up a meeting to purchase two ounces of crack cocaine.

{¶ 3} As part of the investigation, Detective Greg Baker conducted surveillance at an apartment building in which Stringer's mother resided. Detective Baker was looking for a maroon SUV that police believed belonged to Stringer, and soon saw a maroon SUV pull up to the apartment building. Stringer and his fiancé, Shauntia Henry, exited the maroon SUV and entered the apartment building. Approximately ten to 15 minutes later, Detective Baker observed Stringer and Henry exit the apartment building and drive away in Stringer's maroon SUV. Detective Baker then informed other officers of Stringer's actions and entered the apartment building to secure it for execution of a possible search warrant, which police were granted. During the execution of the search warrant, police located five ounces (approximately 117 grams) of cocaine inside a cinder block in the hallway used to access the residence of Stringer's mother.

{¶ 4} Sergeant Wade McQueen, who was also involved in the investigation, received information from Detective Baker regarding Stringer's actions. Sergeant McQueen, who was also performing surveillance in an unmarked cruiser, pulled in front of Stringer's vehicle once it left the apartment complex. Sergeant McQueen then requested the assistance of Officer Brian Ungerbuehler to perform a stop of Stringer's vehicle. Officer Ungerbuehler, who was in a marked police cruiser, pulled behind Stringer's vehicle and initiated the stop.

{¶ 5} During the stop, police instructed Stringer and Henry to exit the vehicle. Henry told Sergeant McQueen that she and Stringer knew they were being "set up" and that "you just confirmed it." Police took Stringer's and Henry's phones when Stringer tried to make a phone call while sitting in the back of a police cruiser. Stringer's phone rang when an officer called the number used earlier by the confidential informant to arrange the drug buy. At that point, Stringer told police that he did not have any drugs on his person because he knew he

was being "set up."

{¶ 6} No drugs were found in Stringer's vehicle. Officers noticed that Stringer and Henry were moving awkwardly and also found petroleum jelly in Stringer's vehicle. Officers requested and were granted search warrants to perform body cavity searches on Henry and Stringer. Officer Eric Taylor took Stringer and Henry to the hospital to have body cavity searches performed, but the searches of Stringer and Henry did not uncover any narcotics. However, when Stringer was at the hospital having the cavity search performed, he stated that the cocaine located in the hallway of the apartment complex in which his mother resided belonged to him. Stringer admitted on three separate occasions and to multiple officers, including Officer Taylor and Sergeant McQueen, that the drugs found during the execution of the search warrant belonged to him.

{¶ 7} Stringer was indicted on one count of possession of cocaine, along with a major drug offender specification. Stringer pled not guilty to the charge, and filed a motion to suppress. However, Stringer later withdrew the motion to suppress, and the matter proceeded to a two-day jury trial. The jury found Stringer guilty of possession of cocaine and the accompanying specification. The trial court sentenced Stringer to a mandatory sentence of 11 years in prison and $10,000 in fines. Stringer now appeals his conviction and sentence, raising the following assignments of error. For ease of discussion, we will combine some of Stringer's assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 10} Stringer argues in his first assignment of error that he received ineffective assistance of counsel because his trial counsel withdrew the motion to suppress.

{¶ 11} The Sixth Amendment pronounces an accused's right to effective assistance of counsel. Warning against the temptation to view counsel's actions in hindsight, the United States Supreme Court has stated that judicial scrutiny of an ineffective assistance claim must be "highly deferential***." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052 (1984). The court also stated that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that a defendant must overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶ 12} Also within *Strickland*, the Supreme Court established a two-part test which requires an appellant to establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers*, 12th Dist. No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing *Strickland*.

{¶ 13} Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reviewing court need not address the deficiency issue if appellant was not sufficiently prejudiced by counsel's performance because the appellant must prove both prongs in order to establish ineffective assistance of counsel. *Id.* at 697.

{¶ 14} A "failure to file a suppression motion does not constitute per se ineffective assistance of counsel." *State v. Brown,* 12th Dist. No. CA2002-03-026, 2002-Ohio-5455, ¶ 11, citing *State v. Madrigal,* 87 Ohio St.3d 378, 389 (2000). Nor does the decision to withdraw a motion to suppress constitute per se ineffective assistance of counsel. *State v.*

- 4 -

*Dominguez*, 12th Dist. No. CA2011-09-010, 2012-Ohio-4542, ¶ 20. Instead, the decision to withdraw a motion to suppress "constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful." *Id.,* citing *State v. Robinson,* 108 Ohio App.3d 428, 433 (3rd Dist.1996). "Even when some evidence in the record supports a motion to suppress," an appellate court presumes that defense counsel was effective if defense counsel could reasonably have decided that the motion to suppress would have been futile. *Brown* at ¶ 11. "Filing a motion to suppress is not without risks, and the fact that counsel filed a motion for leave to file the motion to suppress, and later withdrew that motion, is compelling evidence of a tactical decision." *Madrigal*, 87 Ohio St.3d at 389.

{¶ 15} Stringer argues that his trial counsel was ineffective for withdrawing the motion to suppress because without the motion, the trial court was not able to address the constitutional validity of the initial stop and arrest, the reliance on information from the confidential informant, and the validity of the search warrant. Stringer essentially argues that his trial counsel was ineffective because the trial court would have granted his motion to suppress on these issues. However, these issues were never the focus of the motion to suppress originally filed. Instead, Stringer challenged only the statements he made to officers regarding the drugs. Even if we were to modify Stringer's argument into one that alleges ineffective assistance of counsel because counsel never argued the constitutionality of the stop, the reliance on the confidential informant, or the validity of the search warrant, the claim would still fail.

{¶ 16} The record is clear that trial counsel made a tactical decision to withdraw the motion to suppress. The trial court held a hearing on the motion to suppress, at which time, Stringer's trial counsel stated,

> At this time we're going to withdraw the motion to suppress. I had an opportunity to speak with Mr. Stringer regarding this, Judge, and after reviewing all the evidence, it would appear this

is an issue regarding the weight of the evidence, not necessarily its admissibility, and so in that respect, we're going to withdraw the motion and move forward with trial.

{¶ 17} At trial, defense counsel cross-examined the state's witnesses regarding evidence that Stringer now claims should have been suppressed. For example, Stringer's counsel cross-examined Detective Baker and challenged the veracity of the affidavit supporting the search warrant. Defense counsel asked Detective Baker to read the affidavit, including an averment that Stringer was seen leaving a specific apartment within the complex. However, Detective Baker admitted that he saw Stringer leave the apartment building, but did not see Stringer leave any specific apartment located inside the building. Through this cross-examination, the jury was presented with an inconsistency that may have led them to question the integrity of the investigation, or to question the credibility of the state's witnesses.

{¶ 18} Stringer's defense counsel also cross-examined Sergeant McQueen, who testified that Stringer admitted that the drugs found in the apartment building were his. In answering defense counsel's questions, McQueen acknowledged that police did not record Stringer's verbal admission to owning the drugs, nor did they have any written statement from Stringer admitting as much. Officer Taylor, who took Stringer and Henry to the hospital for the body cavity searches, also testified that Stringer admitted that the drugs were his. Defense counsel cross-examined Officer Taylor extensively about Stringer's supposed statements not being recorded, and implied that Officer Taylor acted unprofessionally and broke normal police practice by not recording the statements. To rebut the testimony that Stringer admitted to possessing the cocaine, defense counsel called Henry as a witness, and she testified that Stringer never admitted to any police officer that the cocaine was his. Stringer also took the stand in his own defense, and denied ever having admitted that the

drugs belonged to him.[1]

{¶ 19} Overall, the transcript of the proceedings clearly indicates that Stringer's defense strategy was to test the integrity of the police investigation and the credibility of the police officers who testified. Therefore, Stringer's trial counsel made a tactical decision to withdraw the motion to suppress and employ a defense using information regarding the police investigation and Stringer's alleged statements to police.

{¶ 20} After reviewing the record, it is clear that a motion to suppress would not have been granted on any of the issues raised herein regarding Stringer's statements, the constitutionality of the investigatory stop, police reliance on the confidential informant, or the validity of the search warrant, as the record indicates that all evidence was collected and admitted without any violation of Stringer's constitutional rights. Having found that Stringer did not receive ineffective assistance of counsel, his first assignment of error is overruled.

{¶ 21} For ease of discussion, we will address Stringer's second and third assignments of error together.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF POSSESSION OF COCAINE IN VIOLATION OF R.C. 2925.11.

{¶ 24} Assignment of Error No. 3:

{¶ 25} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 26} Stringer argues in his second and third assignments of error that his conviction was against the manifest weight of the evidence, and was not supported by sufficient

---

1. The motion to suppress originally filed alleged that the police took Stringer's statements in violation of his constitutional rights. During trial, the defense abandoned that theory completely, and instead, tried to prove that the statements were never made.

evidence.

**{¶ 27}** Manifest weight and sufficiency of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins,* 78 Ohio St.3d 380, 386, (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson,* 12th Dist. No. CA2006-01-007, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

**{¶ 28}** While the test for sufficiency requires an appellate court to determine whether the state has met its burden of production at trial, a manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *Wilson*, 2007-Ohio-2298.

> In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Cummings*, 12th Dist. No. CA2006-09-224, 2007-Ohio-4970, ¶ 12.

**{¶ 29}** While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest

miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *Thompkins*, 78 Ohio St.3d at 387.

{¶ 30} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Wilson*, 2007-Ohio-2298 at ¶ 35, citing *State v. Lombardi*, 9th Dist. No. 22435, 2005-Ohio-4942, fn. 4.

{¶ 31} A conviction can be based on circumstantial evidence alone. *State v. Shannon,* 191 Ohio App.3d 8, 2010-Ohio-6079, ¶ 10 (12th Dist.). Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind. *State v. Ortiz-Bajeca,* 12th Dist. No. CA2010-07-181, 2011-Ohio-3137. Circumstantial evidence and direct evidence inherently possess the same probative value. *Id.* In some cases, certain facts can only be established by circumstantial evidence, and a conviction based thereon is no less sound than one based on direct evidence. *Shannon.* In fact, circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence. *State v. Ballew,* 76 Ohio St.3d 244, 249 (1996).

{¶ 32} Stringer was convicted of possession of cocaine in violation of R.C. 2925.11(A), which states, "no person shall knowingly obtain, possess, or use a controlled substance."[2] R.C. 2925.01(K) defines possess or possession as "having control over a thing or substance, but [possession] may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. Constructive possession exists when one

---

2. The accompanying specification attached to the cocaine possession charge by virtue of R.C. 2941.1410 and R.C. 2929.01(W), which defines a major drug offender as one who possesses more than 100 grams of cocaine.

is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession. *State v. Gaefe,* 12th Dist. No. CA2001-11-043, 2002-Ohio-4995, at ¶ 9. Dominion and control can be proven by circumstantial evidence alone. *Id.*; *State v. Contreras*, 12th Dist. No. CA2004-07-181, 2006-Ohio-1894.

{¶ 33} Stringer argues that his conviction for possession of cocaine was not supported by sufficient evidence and is against the manifest weight of the evidence because the state failed to prove that he ever possessed the cocaine. However, Stringer's conviction did not create a manifest miscarriage of justice because after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶ 34} While Stringer argues that no state witness was able to testify that Stringer actually possessed the cocaine, the state presented circumstantial evidence regarding Stringer's constructive possession of the cocaine. The jury heard evidence that the cocaine was located in the access hallway of his mother's residence in the apartment building that Stringer had just visited, and that such was found soon after Stringer agreed to sell the confidential informant cocaine. Moreover, Stringer readily admitted ownership of the cocaine to police on at least three different occasions.

{¶ 35} Stringer also argued that another individual was seen in the hallway where the drugs were found, thus demonstrating that Stringer did not have exclusive access to the area where the drugs were found. However, the jury was free to consider the circumstantial evidence that Stringer had constructive possession of the drugs in question, especially given his admitted ownership of them, rather than anyone else who may have had access to the hallway.

{¶ 36} As previously discussed, Stringer testified in his own defense, and also called

Henry as a witness. Both testified that Stringer never told police that the drugs were his. However, by virtue of the jury's verdict, the jury did not find the testimony credible, and instead found credible the testimony of the various police officers who testified. Determining which witnesses are credible is an issue for the jury to decide because the jury is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. After reviewing the record, we cannot say that the jury clearly lost its way when determining that the state's witnesses were credible while Stringer and Henry's testimony lacked credibility.

{¶ 37} Having found that Stringer's conviction is supported by the manifest weight of the evidence, and is therefore supported by sufficient evidence, his second and third assignments of error are overruled.

{¶ 38} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.