[Cite as *State v. Saunders*, 2013-Ohio-2052.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2012-03-006 |
| Plaintiff-Appellee, | : | |
| | : | O P I N I O N<br>5/20/2013 |
| - vs - | : | |
| | : | |
| SHANON M. SAUNDERS, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 11CRI00268


Jess C. Weade, Fayette County Prosecuting Attorney, John M. Scott, Jr., 110 East Court Street, Washington, C.H., Ohio 43160, for plaintiff-appellee

Susan Wollscheid, P.O. Box 841, Washington, C.H., Ohio 43160, for defendant-appellant


**S. POWELL, J.**

{¶ 1}   A convicted burglar challenges on appeal the propriety of the investigatory stop of his vehicle, and the weight and sufficiency of the evidence for his conviction.  We affirm the judgment, finding the police had reasonable, articulable suspicion to stop the vehicle, and the judgment was supported by both the manifest weight and sufficiency of the evidence.

{¶ 2}   Defendant-appellant, Shanon Saunders, was charged in Fayette County Common Pleas Court with one count of burglary, after it was alleged he broke into a

residence while a female resident was inside. Saunders moved to suppress the evidence; the trial court denied the motion. Saunders' case was tried to a jury, which returned a guilty verdict. After sentence was imposed, Saunders instituted this appeal.

{¶ 3} While Saunders' brief does not delineate any assignments of error, we presume the two "issues" set forth are his assignments of error, and we will treat them as such.

{¶ 4} Assignment of Error No. 1:

{¶ 5} THE TRIAL COURT PREJUDICIALLY ERRED IN NOT SUPPRESSING ALL EVIDENCE AND OBSERVATIONS MADE AFTER THE UNLAWFUL SEIZURE OF THE DEFENDANT-APPELLANT UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶ 6} Saunders argues his motion to suppress should have been granted because the deputy who performed an investigatory stop of his vehicle lacked reasonable, articulable suspicion that Saunders was involved in criminal activity.

{¶ 7} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. When considering a motion to suppress, the trial court assumes the role of trier of fact and is, therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.* Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

{¶ 8} A police officer may briefly stop and detain an individual without an arrest warrant or probable cause for an arrest in order to investigate the officer's reasonable suspicion of criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868 (1968).

{¶ 9} The officer "must be able to point to specific and articulable facts which, taken

together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991), citing *Terry* at 21-22; *Jimenez* at ¶ 10; *State v. McMullen*, 12th Dist. No. CA2009-09-235, 2010-Ohio-3369, ¶ 12 (police must be able to cite to articulable facts that give rise to a reasonable suspicion that an individual is currently engaged in, or is about to engage in, criminal activity).

{¶ 10} A reasonable, articulable suspicion of criminal activity is something more than an "unparticularized suspicion" or hunch. *See Terry* at 22, 27; *State v. Lindsey*, 2d Dist. No. 24943, 2012-Ohio-3105, ¶ 19; *State v. Martin*, 12th Dist. No. CA2012-06-020, 2013-Ohio-1846.

{¶ 11} The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances as assessed through the eyes of a reasonable and cautious police officer on the scene, guided by his or her experience and training. *State v. Layne*, 12th Dist. No. CA2010-09-073, 2011-Ohio-3763, ¶ 31, citing *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988); *see also Terry* at 27.

{¶ 12} A review of the transcript from the suppression hearing and the finding of facts stated by the trial court are as follows:

{¶ 13} A Fayette County Sheriff's deputy was dispatched in reference to a burglary in progress. He was told by dispatch to be on the look out for an older model Jeep sport utility-type vehicle, dark in color, possibly black, with two Caucasian suspects, one male and the other possibly a female. The male was reportedly wearing a light-colored Carhartt (work) jacket. The other person wore dark-colored clothing and eyeglasses.

{¶ 14} The deputy pulled over a dark-colored sport utility vehicle (SUV) with a single female occupant, who was immediately eliminated as a suspect. The SUV driver, however, provided information that, in part, prompted the deputy to take the nearby entrance ramp and head north on I-71. Once on the interstate, the deputy encountered an older model dark-

colored Jeep. The deputy followed the vehicle for a couple of miles, and at one point, drove nearly parallel to the Jeep. The deputy observed that the driver was a tall, slender male in a light-colored Carhartt-type jacket, and the passenger was a white female wearing eyeglasses. The deputy stopped the vehicle when backup arrived.

{¶ 15} After hearing the testimony, the trial court denied the motion to suppress from the bench. The trial court found the deputy had reasonable, articulable suspicion of criminal activity to stop the vehicle.

{¶ 16} Based on the totality of the circumstances, including the reasonable inferences the deputy was entitled to draw from the facts, we conclude the deputy had reasonable, articulable suspicion that the Jeep and its occupants were involved in the burglary, justifying an investigatory stop of the vehicle Saunders was driving.

{¶ 17} The deputy testified he received a call about a burglary in progress in the area; dispatch informed him to look for a dark-colored Jeep SUV with two Caucasian individuals, one male wearing a lighter Carhartt-type jacket and the other person, possibly a female, wearing dark-colored clothes and eyeglasses.

{¶ 18} After receiving the information, the deputy drove onto the interstate on the ramp near the scene of the burglary and subsequently encountered a vehicle on the interstate that matched the description of the suspects' vehicle. Before acting, the deputy took the opportunity to observe that the Jeep contained two Caucasian occupants -- a male and female -- with both individuals wearing clothing similar to the clothing description provided. These facts provided the deputy with reasonable, articulable suspicion to stop the vehicle. *See State v. Pressley*, 2nd Dist. No. 24852, 2012-Ohio-4083, ¶ 22 (description and location of vehicle and fact vehicle contained four individuals as reported, provided officer with reasonable, articulable suspicion to stop). Accordingly, the trial court did not err in denying the motion to suppress evidence. Saunders' first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE TRIAL COURT ERRED BY ACCEPTING GUILTY VERDICT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WITH INSUFFICIENT EVIDENCE. [sic]

{¶ 21} Saunders argues the jury's guilty verdict was contrary to the manifest weight of the evidence and not supported by sufficient evidence because the state's case consisted of evidence that Saunders and his passenger were driving a vehicle and wearing clothing similar to the descriptions provided by the victim, and "nothing more." Saunders also stresses that the victim could not identify the individuals accused of the crime, particularly when the victim thought the male was clean-shaven and Saunders had facial hair. Also, Saunders asserts there was no physical evidence linking him to the crime scene.

{¶ 22} Manifest weight and sufficiency of the evidence are quantitatively and qualitatively different legal concepts. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 23} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Stringer*, 12th Dist. No. CA2012-04-095, 2013-Ohio-988, ¶ 27. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 24} While the test for sufficiency requires an appellate court to determine whether the state has met its burden of production at trial, a manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *Stringer* at ¶ 28.

{¶ 25} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable

- 5 -

inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 39.

{¶ 26} We perform this review, mindful the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence. *State v. Walker*, 12th Dist. No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *Thompkins*, 78 Ohio St.3d at 387. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment on the weight of the evidence in a jury trial. *Id.* at 389.

{¶ 27} Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. *Stringer*, 2013-Ohio-988 at ¶ 30. Therefore, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.*

{¶ 28} Saunders was charged with R.C. 2911.12(A)(1). This statutory provision states that no person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense. R.C. 2911.12(A)(1).

{¶ 29} Saunders does not dispute whether a burglary took place at the victim's house, and apparently does not contest any particular element of the offense of burglary. Instead, Saunders disputes the identity of the perpetrator, or, in other words, Saunders maintains the

state prosecuted and convicted the wrong man.

{¶ 30} The record at trial reveals the following facts pertinent to Saunders' second assignment of error.

{¶ 31} The female victim testified she was working with her holiday decorations on the December afternoon in question when she noticed a vehicle coming down the street. When she did not see the vehicle continue on the street, she realized it must have turned into her driveway; however, her view of her driveway is obstructed by her garage.

{¶ 32} Shortly thereafter, a person walked up to the victim's front door. The victim used female pronouns when describing this person, but admitted she was not sure of the gender at the time. The victim said the individual was wearing a dark-colored hood pulled down to eyebrow level and jacket zipped up to her chin; her head was down and her hands were in her pockets. The person rang the doorbell, knocked lightly twice, and walked away from the door when the victim did not respond.

{¶ 33} The victim next observed a second individual standing at her kitchen door. She said she could only see the person's shoulder, because the individual was "all bent over." The victim took her telephone into the bathroom, closed the door, and called the sheriff's department. While she was on the phone with the dispatcher, she heard someone kicking "real hard" on her door and then the sound of breaking glass. The dispatcher also heard the pounding and glass breaking. A sheriff's detective would later testify that a rock was thrown through the glass of the kitchen door.

{¶ 34} Moments later, the victim said she was not certain whether she or the intruder opened the bathroom door, but the door was opened and "there I stood[,] and he [the burglar] went, 'oops!'" The man reportedly turned, ran down the hall, slipped on a throw rug on his way out the door, and left the house. She said the man was wearing a tan jacket and tan-colored pants. She acknowledged she told the dispatcher at the time she thought the

jacket might be a Carhartt jacket. The victim later identified the jacket and pants the prosecutor showed her as matching the color of the jacket and pants she saw the male wearing that day.

{¶ 35} The victim said she moved to the front door in time to see the vehicle "headed north toward the freeway." She described the vehicle as a dark-colored "old fashion old style Jeep." "I called it a station wagon cause that's what we knew them back years ago was an old style station wagon." [sic]

{¶ 36} The defense pointed out to the victim that she previously testified the male suspect was clean shaven and the other suspect was short, perhaps five feet tall. Photographs depicting Saunders and the female suspect at the traffic stop were admitted as exhibits. A deputy testified that Saunders had a beard that day.

{¶ 37} In responding to a question about the facial hair, the victim said the male suspect was very tall, that he turned his head away from her to run, and all she could see was a part of his neck, which was not covered with hair. She further indicated she was not very good at estimating a person's height. The jury was later able to view the woman who was Saunders' female passenger.

{¶ 38} The deputy who made the traffic stop testified he received a call about a burglary in progress at 1:48 p.m. and initiated the stop of Saunders' vehicle on northbound I-71 at 2:06 p.m. A detective indicated he later drove from the victim's house to the location of the traffic stop and calculated it took him 16 minutes to travel the 17.1 miles.

{¶ 39} A forensic scientist with the Bureau of Criminal Identification and Investigation testified that he found seven small fragments that he determined to be clear, colorless glass, which he collected from debris taken from Saunders' shoes. He also found seven additional glass fragments on the soles of the shoes. The witness indicated it is more common to pick up glass fragments on the soles of shoes, but less common from the debris from shoes

themselves.

**{¶ 40}** The forensic scientist testified that he was not asked to compare the glass fragments he discovered to any glass standard, such as the glass from the victim's door. He acknowledged that he could not determine the source of the glass, or how long the glass was on Saunders' "well used shoes."

**{¶ 41}** Saunders presented testimony from his father and step sister, who both said Saunders and his father worked with scrap metal and in that process, worked around broken glass and scrap yards all of the time.

**{¶ 42}** Further, the victim acknowledged that she was brought to the scene of the traffic stop of Saunders' vehicle, but could not identify Saunders and the women passenger as the two people who broke into her house.

**{¶ 43}** While the victim was unable to identify Saunders as the person who burglarized her home, she was able to provide descriptions of the vehicle the suspects were driving and the clothes they were wearing. The record shows the victim's house was close to the interstate. Saunders and his companion were located on that interstate, driving a vehicle and wearing clothing that matched the descriptions provided. In addition, forensic evidence showed the shoes Saunders was wearing contained clear glass fragments, which could place Saunders at the crime scene.

**{¶ 44}** Certainly, Saunders' conviction was secured by circumstantial evidence. We note that both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence. *State v. Crutchfield*, 12th Dist. No. CA2005-11-121, 2006-Ohio-6549, ¶ 20. Circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75. A conviction based on purely circumstantial evidence is no less sound than

a conviction based on direct evidence. *State v. Shannon*, 191 Ohio App.3d 8, 2010-Ohio-6079 (12th Dist.), ¶ 10.

{¶ 45} After applying the pertinent standard of review for Saunders' manifest weight of the evidence challenge, we do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. The conviction was supported by the manifest weight of the evidence. In addition, the record indicates there was sufficient evidence for the jury to find beyond a reasonable doubt that Saunders committed the burglary offense. Saunders' second assignment of error is overruled.

{¶ 46} Judgment affirmed.

HENDRICKSON, P.J. and M. POWELL, J., concur.