[Cite as *State v. Calhoun*, 2014-Ohio-3662.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-05-014 |
| | : | O P I N I O N |
| - vs - | | 8/25/2014 |
| | : | |
| JASON R. CALHOUN, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 13 CRI 00039

Jess C. Weade, Fayette County Prosecuting Attorney, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Shannon M. Treynor, 63 North Main Street, P.O. Box 735, London, Ohio 43140, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, Jason R. Calhoun, appeals the judgment of the Fayette County Common Pleas Court convicting him of multiple offenses, including burglary, theft, breaking and entering and two counts of misuse of credit cards, for which he was sentenced to a total of ten years in prison. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} On January 3, 2013, appellant broke into the home of Jane Dill, who was 92 years old, sometime after she had fallen asleep around 10:00 p.m. that night. He stole credit cards from her purse and several large-scale electronics. Dill's kitchen window was later discovered broken. One of Dill's neighbors, Paul E. Newberry, who owns a nearby vacant home that been put up for sale, discovered that a dining room window in the home had been broken, one of the screens on the porch had been cut, and a few screens on the back of the house were out of place, but nothing was taken from the home. Carl Smith, whose mother, Irene Smith, is in a nursing home but still owns property in the same neighborhood, noticed a screen out of place on his mother's home and that a window had been "knocked out in the house." Carl also found splatters of blood all around his mother's house and saw that someone had gone through a jewelry box that was in the house, opening its drawers and upending its contents, and had left other personal effects out of place.

{¶ 3} At approximately 12:30 a.m. on January 4, 2013, a Murphy USA gas station clerk, Kaley Dunham, sold two cartons of cigarettes to a man who was later determined to be appellant. Appellant paid for the cigarettes with a credit card that belonged to Jane Dill. Appellant initially signed his name "Jason Calhoun" on the credit card transaction slip. However, he requested the credit card slip back, scratched out his signature, "Jason Calhoun," and then scribbled something illegible under his scratched-out signature. Dunham saw appellant leave with two women in a taxi.

{¶ 4} Shortly thereafter, appellant and the two women entered a WalMart that was near the Murphy USA gas station. A WalMart night-time cashier, Alexandria Harter, saw appellant and the two women use a credit card to make a "test purchase" of three Pepsis to "clear the card to see if it would work." Harter observed appellant and the two women as they looked through the store. At one point, they came up to Harter and asked for help in the jewelry department, and Harter sent one of her fellow employees to help them. Appellant

and the two women went to the electronics department, and then walked up to the checkout register, with a Galaxy tablet, several different pieces of jewelry and three cell phones. Harter rang up the items that appellant and the two women sought to purchase, which totaled approximately $1,600. Appellant handed Harter a credit card to pay the $1,600 bill. Harter took the credit cart and charged the $1,600 bill to it, using the store's computerized checkout register, and $1,600 was debited to the credit card. At the same time, however, the computerized checkout register prompted Harter to check the customer's I.D. When Harter asked appellant to see the credit card and his I.D., she noticed that the name on the credit card was "Jane Dill" while the name on appellant's I.D. was "Jason Calhoun." Harter then summoned the store's manager, Alana Bryant.

{¶ 5} When Bryant came to the checkout register, appellant explained to her that the credit card belonged to his mother and that he had permission to use it to buy Christmas presents for himself and his friends who were with him. Bryant told appellant that he could not use the credit card because the name on the I.D. he provided did not match the name on the credit card. Bryant made appellant take the items to the store's service desk. She escorted him and the two women with him to the store's customer service area to ring back the items. When they got there, Bryant refunded all the money to the credit card that had been debited to it as a result of appellant's use of it. After refunding the money to the credit card, Bryant stepped into the store's cash office and called the police. Appellant and the two women left the store, with appellant taking the credit card with him. Harter heard appellant and the two women say as they left, "hurry, run, hurry[.]" After the three had "dart[ed] off," one of them came back inside and told Harter that they were trying to get a taxi. Eventually, a taxi came and the three got into it and left the store.

{¶ 6} Officer Jeff Heinz was dispatched to the WalMart in response to Bryant's call. When he arrived there five minutes later, he noticed a taxi that was just pulling out. Officer

- 3 -

Heinz flagged down the taxi driver to get him to stop, which he did. The taxi driver told Officer Heinz that he had just picked up the three individuals seated in his taxi from WalMart. Officer Heinz spoke to all three of the passengers, including appellant. Appellant first told Officer Heinz that his name was "Kyler Willis," but appellant was unable to provide his social security number. One of the two females with appellant in the taxi eventually told Officer Heinz who appellant actually was, and appellant himself eventually admitted who he was. Officer Heinz found two Fifth Third credit cards, one blue and the other gold, lying on the passenger-side floorboard of the taxi. Both credit cards bore Jane Dill's name. Officer Heinz found two cartons of cigarettes in the backseat in the passenger area and another carton of cigarettes and a pack of Newports that were in the front of the vehicle. Officer Heinz noticed that appellant had an injury to his hand that was bleeding through its bandages.

{¶ 7} Appellant was indicted in Case No. 13CRI00039 on ten counts involving the events that occurred at the Murphy USA gas station and WalMart on or about January 4, 2013. The charges included four counts of forgery in violation of R.C. 2913.31(A)(1) and 2913.31(A)(3), with all four counts being fifth-degree felonies (Counts One, Two, Three and Four); two counts of receiving stolen property in violation of R.C. 2913.02(A)(3), both fifth-degree felonies (Counts Six and Seven); two counts of misuse of credit card in violation of R.C. 2913.21(B)(2), with a specification that the victim was an elderly person in violation of R.C. 2913.21(D)(4), both fourth-degree felonies (Counts Eight and Nine); and one count of theft in violation of R.C. 2913.02(A)(3), a first-degree misdemeanor (Count Ten).

{¶ 8} Appellant was indicted in Case No. 13CRI00040 on five counts involving the break-ins that occurred at the houses of Dill, Newberry and Irene Smith on or about January 3, 2013. The charges included burglary in violation of R.C. 2911.12(A)(1), a second-degree felony (Count One); theft in violation of R.C. 2913.02(A)(1), a fifth-degree felony (Count Two);

two counts of breaking and entering in violation of R.C. 2911.13(A), both fifth-degree felonies (Counts Three and Four); and possession of criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony (Count Five), with a specification that the device or instrument was intended for use in the commission of a felony.

{¶ 9} Appellant was tried by jury simultaneously on Case Nos. 13CRI00039 and 13CRI00040. The state presented the testimony of several law enforcement officers involved in the case and the employees of Murphy USA gas station and WalMart who testified to the facts related above. The state presented photos of shoe prints at the crime scene and appellant's shoes, which were collected at the time of his arrest. The state also presented testimony from a forensic expert who testified that appellant's shoes had tread impressions consistent with those found at one of the homes that had been burglarized and a DNA expert who testified that appellant's blood DNA was consistent with blood found on a rock and a jewelry box at one of those same homes.

{¶ 10} At the close of evidence, the state dismissed Counts Five (attempted theft) and Ten (theft) in Case No. 13CRI00039, and in that same case, the trial court joined Counts Six and Seven (each count for receiving stolen property) into a single count, Count Six. The jury convicted appellant in Case No. 13CRI00039 of four counts of forgery (Counts One, Two, Three and Four); receiving stolen property (Count Six); both counts of misuse of credit cards (Counts Eight and Nine) and the elderly-victim specifications attached to those two counts. The jury acquitted appellant in Case No. 13CRI00040 of one count of breaking and entering (Count Three) and possession of criminal tools (Count Five), but convicted him of burglary (Count One), theft (Count Two) and the remaining count of breaking and entering (Count Four).

{¶ 11} At appellant's sentencing hearing, the trial court determined, as to Case No. 13CRI00039, that appellant's convictions on Counts One (forgery), Two (forgery) and Eight

(misuse of credit cards) were allied offenses of similar import and that appellant's convictions on Counts Three (forgery), Four (forgery) and Nine (misuse of credit cards) were allied offenses of similar import. The state elected to proceed on Count Eight (misuse of credit cards at WalMart) and Count Nine (misuse of credit cards at Murphy USA gas station). The trial court sentenced appellant to 12 months in prison on each count of misuse of credit cards and ordered him to serve those two 12-month prison terms concurrently. The trial court merged appellant's conviction on Count Six (receiving stolen property) with his conviction on Count Two (theft) in Case No. 13CRI00040, after finding that those offenses were allied offenses of similar import, and the state elected to proceed on appellant's theft conviction in Count Two.

{¶ 12} In Case No. 13CRI00040, the trial court sentenced appellant to eight years in prison for his conviction on Count One (burglary), 12 months in prison for his conviction on Count Two (theft) and 12 months in prison for his conviction on Count Four (breaking and entering), and ordered him to serve each of those sentences consecutively, giving him a ten-year prison sentence for his convictions in that case. The trial court then ordered appellant to serve his ten-year prison sentence in Case No. 13CRI00040 concurrently with his 12-month prison sentence in Case No. 13CRI00039, giving him an aggregate ten-year prison sentence for his convictions in both cases.

{¶ 13} Appellant now appeals, assigning the following as error:

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE COURT ABUSED ITS DISCRETION BY NOT PERMITTING A CONTINUANCE FOR THE DEFENDANT TO BRING FORTH WITNESSES TO TESTIFY IN HIS BEHALF.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THERE WAS INSUFFICIENT EVIDENCE PRESENTED TO CONVICT THE

DEFENDANT COUNT EIGHT, MISUSE OF A CREDIT CARD. [sic]

{¶ 18} Assignment of Error No. 3:

{¶ 19} THE COURT ERRED BY OVERRULING THE DEFENDANT'S MOTION FOR RULE 29 DIRECTED VERDICT OF ACQUITTAL AS TO COUNTS THREE, FOUR AND NINE.

{¶ 20} Assignment of Error No. 4:

{¶ 21} THE COURT COMMITTED REVERSIBLE ERROR BY SENTENCING THE DEFENDANT TO MAXIMUM, CONSECUTIVE SENTENCES IN CASE NO. 13CR100040.

{¶ 22} In his first assignment of error, appellant argues the trial court erred by denying his request on the morning of trial for a continuance to subpoena witnesses on his behalf, because the trial court did not inquire as to the length of delay being sought by him to procure his witnesses, he previously had not sought a continuance, the state would not have been unduly inconvenienced by the continuance even though the state's witnesses may have been inconvenienced, and he had limited access to his attorney due to his incarceration. This argument lacks merit.

{¶ 23} A trial court has broad discretion in deciding whether or not to grant a continuance, and its decision will not be overturned unless it amounts to an abuse of discretion, i.e., it is unconscionable, arbitrary or unreasonable. *State v. Grant*, 67 Ohio St.3d 465, 479 (1993). The trial court may consider all relevant factors, including the reasons for, and the length, of the continuance requested; whether any prior continuance was granted in the case; inconvenience to the parties; and whether the defendant contributed to the reasons for the requested continuance. *Id.*

{¶ 24} Here, the trial court did not abuse its discretion by denying appellant's motion for a continuance since it was made on the morning of trial and the two cases on which appellant was being tried had been pending for approximately two months, one of appellant's

victims was 92 years old, appellant's attorney previously represented to the trial court that there was no further reciprocal discovery needed, and appellant failed to proffer the names of the witnesses whose testimony he sought to present and explain how they would assist his defense.

{¶ 25} Therefore, appellant's first assignment of error is overruled.

{¶ 26} In his second assignment of error, appellant argues the state failed to present sufficient evidence to convict him of Count Eight in Case No. 13CRI00039, which charged him with misuse of credit cards at WalMart. The charge arose from appellant's use of a stolen credit card at WalMart to purchase electronics and jewelry worth $1,600. Appellant contends that since the computerized checkout register at WalMart would not complete the transaction in the absence of a valid I.D. check and the transaction was voided and the charges were refunded to the cardholder, no property was "obtained" by him before leaving the store, and therefore, the state failed to prove the elements of the offense of misuse of credit card.

{¶ 27} Initially, appellant failed to file a timely Crim.R. 29 motion for acquittal on Count Eight. The Ohio Supreme Court has held that if a criminal defendant fails to file a timely Crim.R. 29 motion for acquittal, the defendant waives, for purposes of appeal, all but plain error regarding the sufficiency of the evidence. *State v. Roe*, 41 Ohio St.3d 18, 25 (1989), and *Dayton v. Rogers*, 60 Ohio St.2d 162, 163 (1979). However, the court has stated in two more recent cases that a failure to file a timely Crim.R. 29(A) motion during a jury trial does not waive an argument regarding the sufficiency of the evidence since the defendant's "not guilty" plea preserves his right to challenge the sufficiency of the evidence on appeal. *State v. Jones*, 91 Ohio St.3d 335, 346 (2001); *State v. Carter*, 64 Ohio St.3d 218, 223 (1992).

{¶ 28} "An alleged error is plain error only if it is 'obvious,' and 'but for the error, the outcome of the trial clearly would have been otherwise.'" *State v. Blake*, 12th Dist. Butler No.

CA2011-07-130, 2012-Ohio-3124, ¶ 25, quoting *State v. Jackson,* 12th Dist. Fayette No. CA2011-01-001, 2011-Ohio-5593, ¶ 13, citing *State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 181.  It has been held that "because 'a conviction based on legally insufficient evidence constitutes a denial of due process,' *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386-387, a conviction based upon insufficient evidence would almost always amount to plain error." *State v. Coe*, 153 Ohio App. 3d 44, 49, 2003-Ohio-2732 (4th Dist.2003).

{¶ 29} R.C. 2913.21 defines the offense of misuse of credit cards, in pertinent part, as follows:

> (B) No person, with purpose to defraud, shall do any of the following:
>
> * * *
>
> (2) Obtain property or services by the use of a credit card, in one or more transactions, knowing or having reasonable cause to believe that the card has expired or been revoked, or was obtained, is retained, or is being used in violation of law[.]

{¶ 30} R.C. Chapter 2913 does not define the word "obtain."  Therefore, the word must "be read in context and construed according to the rules of grammar and common usage." R.C. 1.42.  "Obtain" is commonly defined as meaning "to gain or attain possession or disposal of [usually] by some planned action or method[.]"  Webster's Third New International Dictionary (1993) 1559.

{¶ 31} Here, the credit card appellant used at WalMart went through the store's computerized checkout register.  The charges for the merchandise that appellant brought to the register to purchase were debited to the credit card.  Once the store's employees discovered that the name on appellant's I.D. did not match the name on the credit card, they voided appellant's $1,600 purchase and refunded to the credit card the $1,600 that had been debited to it.  Under these facts, we conclude that at the very moment the funds were debited to the stolen credit card, appellant, "with purpose to defraud" "obtained[ed] property" "by the

use of a credit card," "knowing or having reasonable cause to believe that the card * * * was obtained, is retained, or is being used in violation of law[.]" Our conclusion is not changed by the fact that the store's computerized checkout register prompted the store's employees to check the customer's I.D., which in turn led them to prohibit appellant from leaving the store with the merchandise, because by the time the store's employees checked appellant's I.D., he already had completed the offense of misuse of credit cards as defined in R.C. 2913.21(B)(2).

{¶ 32} Therefore, appellant's second assignment of error is overruled.

{¶ 33} In his third assignment of error, appellant argues the state failed to present sufficient evidence to prove that he was the perpetrator of the offenses committed at Murphy USA gas station that formed the basis of Count Three (forgery without consent), Count Four (forgery by uttering) and Count Nine (misuse of credit card) in Case No. 13CRI00039. Appellant points out that the state failed to have the cashier at Murphy USA gas station identify him as the person who entered the store, purchased the cigarettes, used the credit card or signed the transaction slip and that the cashier had lots of customers and thus probably could not remember this particular transaction. We find this argument unpersuasive.

{¶ 34} The identification of a perpetrator can be established by circumstantial evidence. *State v. Saunders*, 12th Dist. Fayette No. CA2012-Ohio-006, 2013-Ohio-2052, ¶44. Here, even though the state did not have the cashier at Murphy USA gas station identify appellant at trial as the person who used Jane Dill's credit card to purchase the two cartons of cigarettes, there was ample circumstantial evidence that appellant was in fact the person who did so. State's Exhibit 12 shows a receipt from Murphy USA gas station that has appellant's name "Jason Calhoun" scratched out, and underneath it, has an illegible scribble. The cashier noted that the individual who signed the name "Jason Calhoun" was seen

leaving the store in a taxi cab. Appellant was in the vicinity of the Murphy USA gas station shortly after the cigarette purchase, the cashier and the manager at WalMart saw appellant enter a taxi cab, and shortly thereafter, appellant was apprehended in a taxi cab nearby. There were two cartons of cigarettes found in the taxi cab that matched the ones sold that night at Murphy USA gas station to the man who signed his name "Jason Calhoun," then scratched out that signature and replaced it with a scribble.

{¶ 35} In light of the foregoing, appellant's third assignment of error is overruled.

{¶ 36} In his fourth assignment of error, appellant argues the trial court failed to make the requisite findings under R.C. 2929.14(C)(4) before imposing consecutive sentences on him in Case No. 13CRI00040 for his convictions for burglary, theft, and breaking and entering, for which he received prison sentences of eight years, 12 months, and 12 months, respectively, to be served consecutively. He asserts that the trial court failed to find that (1) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[,]" (2) he "was on some sort of community control sanction at the time these offenses were committed[,]" (3) he "committed one or more of the multiple offenses while he awaiting [sic] trial or sentencing" and (4) "at least two of the multiple offenses were committed as part of one or more courses of conduct." However, appellant misreads R.C. 2929.14(C)(4).

{¶ 37} "The presumption in Ohio is that sentencing is to run concurrent, unless the trial court makes the required findings for imposing consecutive sentences set forth in R.C. 2929.14(C)(4)." *State v. Nia*, 8th Dist. Cuyahoga No. 99387, 2014-Ohio-2527, ¶ 17.

{¶ 38} R.C. 2929.14(C)(4) provides:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive

sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶ 39}** In order to impose a consecutive sentence on an offender, the sentencing court initially must find that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that the consecutive sentence is not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. *Nia*, 2014-Ohio-2527 at ¶18. If the sentencing court makes these findings, it then must find that one of the three circumstances set forth in R.C. 2929.14(C)(4)(a)-(c) exists. *Id.*

**{¶ 40}** Here, the trial court found that "consecutive sentences are necessary to protect the public and to punish the defendant, the emphasis being on protection of the public" and that "a single term does not adequately reflect the seriousness of [the offender's, i.e., appellant's] conduct." These findings demonstrate that the trial court satisfied R.C. 2929.14(C)(4)'s requirements that before imposing consecutive sentences on an offender, the court must find that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the

public[.]"

**{¶ 41}** The trial court also stated that the harm caused by appellant was to an elderly person and that appellant's "criminal history shows that consecutive terms are necessary to protect the public." This finding fulfills R.C. 2929.14(C)(4)'s requirement that the trial court find that one of the three criteria listed in R.C. 2929.14(C)(4)(a)-(c) exists. Specifically, the trial court's finding that appellant caused harm to an elderly person and that his criminal history demonstrates that consecutive sentences are necessary to protect the public shows that the trial court found that "the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(C)(4)(c).

**{¶ 42}** Accordingly, appellant's fourth assignment of error is overruled.

**{¶ 43}** Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.