The STATE of Ohio, Appellee,

v.

SHANNON, Appellant.

[Cite as State v. Shannon, 191 Ohio App.3d 8, 2010-Ohio-6079.]

Court of Appeals of Ohio,
Twelfth District, Brown County.

No. CA2010–03–004.

Decided Dec. 13, 2010.

Jessica A. Little, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

Robert E. Rickey, Brown County Public Defender, and Julie Steddom, for appellant.

WILLIAM W. YOUNG, Presiding Judge.

{¶ 1} Defendant-appellant, Julie Shannon, appeals her conviction in the Brown County Court of Common Pleas for theft in office, tampering with records, and identity fraud.

{¶ 2} Appellant was elected and served as the treasurer clerk for the village of Sardinia, Ohio, from September 2002 through December 31, 2007. She was also the village utility clerk during that time. In those capacities, appellant was responsible for payroll for the village employees and for insuring that the proper withholdings were made, writing payroll checks, including hers, keeping accounting records, keeping records of council meetings, posting utility-meter readings, billing village residents for their utility usage, and collecting money and deposits for utility accounts. Her functions as treasurer clerk and utility clerk ended on December 31, 2007, after she was elected as a village council member for the term beginning in January 2008. During the first two weeks of January 2008, appellant trained Tracy Jodrey, the village's new fiscal officer and utility clerk.

{¶ 3} In April 2009, appellant was indicted on one count each of theft in office in violation of R.C. 2921.41(A)(2), a third-degree felony, tampering with records in violation of R.C. 2913.42(A)(1), a third-degree felony, and identity fraud in violation of R.C. 2913.49(B)(1), a fourth-degree felony. The charges stemmed from a course of conduct between July 1, 2006, and January 10, 2008, during which appellant allegedly issued herself three extra checks; failed to deduct from her paychecks her share of the health-insurance premium; collected money from village residents for new utility accounts but failed to deposit the money in the bank; failed to keep the 2006 and 2007 receipt books documenting the money received from new utility customers; and entered false information into the village utility computer to obtain free utility services from the village, to wit, appellant used her estranged husband's identity to open a second utility account for her home, and as a result, received utility services from the village for her home without paying for them.

{¶ 4} A jury trial was held in January 2010. At trial, the state presented evidence that appellant (1) issued herself two extra paychecks in 2007, for a total of $1,595.91, (2) issued herself a vendor's check in December 2007 for $609.07, and (3) between April 2006 and December 2007, failed to deduct from her paychecks her share of the health-insurance premium, resulting in appellant not paying $4,056.69 in health-insurance premiums. The state also presented evidence that deposits from four new utility customers in 2006 (totaling $240) and 27 new utility

customers in 2007 (totaling $1,620) were collected but not deposited in the bank; the 2006 and 2007 receipt books were never found.

{¶ 5} Finally, the state presented evidence that appellant and her now estranged husband, Robert Shannon, lived together at 121 Pleasant Street, Sardinia, until August 2005, when the husband moved out of the residence and moved to 292 Gay Street, Williamsburg, Ohio. Although appellant continued to live at the 121 Pleasant Street address, her utility account indicated a break in service (no activity) from August 10, 2006, to January 16, 2008. On July 19, 2006, a utility account was opened in the name of Shannon Robert for 121 Pleasant Street, Sardinia, with a billing address of 292 Gay Street, Williamsburg. Beginning on January 16, 2008 (after appellant was done training Tracy Jodrey and after she started her term as village council member), charges began to appear, once again, on appellant's utility account. The charges billed to Shannon Robert, totaling $1,907.50, were never paid. Shannon Robert is the inverted name of appellant's estranged husband, Robert Shannon.

{¶ 6} At the end of the state's case-in-chief, appellant moved for an acquittal under Crim.R. 29(A). The motion was overruled. Appellant renewed her motion at the close of all the evidence. The motion was overruled. On January 28, 2010, the jury found appellant guilty as charged. Appellant was sentenced to three years in prison and ordered to pay the village $9,675.11 in restitution.

{¶ 7} Appellant timely appeals, raising three assignments of error.

Assignment of Error No. 1

{¶ 8} "The trial court erred to the prejudice of defendant-appellant when it denied her motion for acquittal on the charge of theft in office because the evidence against her was insufficient to support a conviction, thereby denying defendant-appellant her rights to due process and a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution."

{¶ 9} A Crim.R. 29 motion is asserted to test the sufficiency of the evidence. When an appellate court reviews a claim that a conviction is not supported by sufficient evidence, its inquiry focuses primarily upon whether, as a matter of law, the evidence presented at trial is legally sufficient to support the jury verdict. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 14. In reviewing the record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. This inquiry does not involve how the appellate court might interpret the evidence. See *State v. McKnight,* 107 Ohio

St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315. Rather, the appellate court must determine whether the evidence admitted at trial, if believed, "would convince the average mind of the defendant's guilt beyond a reasonable doubt." Id. at ¶ 75.

{¶ 10} The Ohio Supreme Court has held that "[a] conviction can be sustained based on circumstantial evidence alone." *State v. O'Hara*, Butler App. No. CA2008–12–295, 2010-Ohio-408, 2010 WL 424587, ¶ 10, citing *State v. Franklin* (1991), 62 Ohio St.3d 118, 580 N.E.2d 1. In some cases, "certain facts can only be established by circumstantial evidence," and a conviction based thereon is "no less sound than one based on direct evidence." *State v. Smith*, Butler App. No. CA2008–03–064, 2009-Ohio-5517, 2009 WL 3350432, ¶ 80.

{¶ 11} In her first assignment of error, appellant challenges her conviction for theft in office with regard to the two extra paychecks and the vendor's check she issued herself, her failure to deduct from her paychecks her share of the health-insurance premium, the missing deposits from new utility customers, and the free utility services she received from the village by using her estranged husband's identity to open a second account for her home address.

{¶ 12} Appellant was convicted of theft in office, in violation of R.C. 2921.41(A)(2), which states: "No public official or party official shall commit any theft offense, as defined in [R.C. 2913.01(K)], when * * * [t]he property or service involved is owned by this state, any other state, the United States, a county, a municipal corporation, a township, or any political subdivision, department, or agency of any of them, is owned by a political party, or is part of a political campaign fund."

{¶ 13} Evidence was presented at trial that appellant and her now estranged husband filed bankruptcy in March 2005, appellant's wages were garnished in 2005 for child-support arrears, and appellant had serious financial difficulties in 2006 and 2007. Evidence was also presented that there are two computers in the office of the village treasurer clerk and utility clerk, a computer dedicated to the village utility accounts and a computer using software to calculate payroll and withholdings, vacation time, compensation time, and sick time.

### Payroll checks and vendor's check

{¶ 14} As treasurer clerk, appellant was responsible for payroll for the village employees and for writing payroll checks. The state presented evidence that the village passed an ordinance, effective December 28, 2005, approving an annual salary of $20,550.40 for appellant. Appellant's pay was $20,569.64 in 2006 and $22,564.15 in 2007. The latter included two extra paychecks, a $649.14 paycheck in October 2007 and a $946.77 paycheck in December 2007. The state also presented evidence that appellant issued herself a vendor's check in December 2007 for $609.07. There was no explanation or documentation attached to

any of the three checks. Appellant admitted issuing the three checks to herself but claimed the two paychecks were for unused accrued vacation whereas the vendor's check was for unused accrued sick time. Appellant further claimed that the checks were either allowed under the village policy-and-procedure handbook ("the village handbook") or had been approved by the village council.

{¶ 15} The minutes of a village council meeting on October 8, 2007, indicates that on that day, appellant asked "for her two weeks of vacation pay since she would not be able to take them" (before she started her term as council member in January 2008), and council approved. At trial, the parties stipulated that a joint exhibit represented all the village council meetings that took place between October 15 and December 31, 2007. While the minutes of the October 8 council meeting approved payment in October for unused accrued vacation time, no other council meetings refer to or specifically approve extra payments to appellant for unused accrued vacation time.

{¶ 16} Appellant claimed that the December 2007 paycheck was for the unused accrued vacation that was not fully paid out in October due to the village's low funds. However, during a December 10 council meeting, appellant told council that the village's funds were low; as a result, a council member, the mayor, and the village solicitor had not been paid and a loan could not be paid in full. With regard to the vendor's check, appellant claimed that the payment was allowed under the village handbook and further that council had advised her on previous occasions to issue vendor's checks to pay for unused accrued sick time. The state presented evidence that under the village handbook, the maximum payment allowed for sick time was one fourth of 45 days at retirement. Appellant admitted that she did not retire. The minutes for council meetings between October and December 2007 neither refer to nor approve payment to appellant for unused accrued sick time.

{¶ 17} The state presented evidence that neither the December 2007 paycheck of $946.77 nor the December 2007 vendor's check of $609.07 were approved by the village council or by the village handbook. Viewing the evidence in a light most favorable to the prosecution, we find that the foregoing circumstantial evidence, if believed, was sufficient to support a finding that the state proved the essential elements of theft in office beyond a reasonable doubt with regard to the two foregoing checks appellant had issued herself.

### Health-insurance premiums

{¶ 18} The state presented evidence that the village had passed an ordinance in 2003 requiring full-time employees to pay 25 percent of the health-insurance premium; in 2006 and 2007, only two village employees, appellant and Timothy Mock, the village administrator, were on the village health-care plan;

and as treasurer clerk, appellant was responsible for insuring that the proper deductions were taken out of payroll checks. Appellant did not properly enter the deductions in the computer for either herself or Mock. As a result, from April 2006 through December 2007, Mock paid $2,874.56 for his share of the health-insurance premiums when he should have paid $3,706.56. During that same period, appellant actually paid nothing when she should have paid $4,056.69. Her share of the health-insurance premium was instead paid by the village (along with its share of the health-insurance premiums). Appellant claimed that the improper deductions were "an honest mistake" caused by the stress of her health problems and regular disputes with the village council. However, the "mistake" went on for 21 months, during which time appellant never realized the error.

{¶ 19} Viewing the evidence in a light most favorable to the prosecution, we find that the foregoing circumstantial evidence, if believed, was sufficient to support a finding that the state proved the essential elements of theft in office beyond a reasonable doubt with regard to appellant's failure to deduct from her paychecks her share of the health-insurance premium.

### Deposits from new utility customers

{¶ 20} During appellant's term as utility clerk, when a new resident wanted utilities, the person would fill out a new customer form and pay a deposit ($60 in 2006 and 2007). In exchange, the new customer received a receipt from a carbon-copy receipt book. As utility clerk, appellant was responsible for collecting deposits from new utility customers, entering the deposits into the utility computer, and depositing the money in the bank. The state presented evidence that deposits from four new utility customers in 2006 (totaling $240) and 27 new utility customers in 2007 (totaling $1,620) were collected but not deposited in the bank. The discovery was made after comparing the 2006 and 2007 forms filled out by new customers and the utility computer and bank records. The 2006 and 2007 receipt books were never found.

{¶ 21} Appellant claimed that Mock and Kristie Cox both collected payments or deposits from utility customers and further that Mock had access to the utility computer and its password. While the village hired Cox to help and substitute for appellant when appellant had health issues, Cox worked only from June to December 2006 and did not work in 2007. Mock testified he was never in appellant's office when she was not there, nor did he have a way to enter if appellant's office was closed. Further, he did not have the protected password for the utility computer. Mock denied entering information in the utility computer or being in the office in 2006 and 2007 when appellant was not in the office. Appellant also claimed that whenever deposits could not be collected from a new customer, she (and Mock) had discretion to accept the deposit at a later date or

add it to the first utility bill. She further claimed she did not always give a receipt for deposits and denied keeping the missing deposits. The jury clearly rejected appellant's explanation.

{¶ 22} Viewing the evidence in a light most favorable to the prosecution, we find that the foregoing circumstantial evidence, if believed, was sufficient to support a finding that the state proved the essential elements of theft in office beyond a reasonable doubt with regard to the 2006 and 2007 missing deposits from new utility customers.

### The utility accounts at 121 Pleasant Street

{¶ 23} As set forth earlier, the state presented evidence that appellant and her now estranged husband, Robert Shannon, lived together at 121 Pleasant Street, Sardinia, until August 2005, when the husband moved out of the residence and moved to 292 Gay Street, Williamsburg, Ohio. Although appellant continued to live at the 121 Pleasant Street address, her utility account indicated a break in service from August 10, 2006, to January 16, 2008. Yet appellant testified that she was receiving utility services from the village during that period. On July 19, 2006, a utility account was opened in the name of Shannon Robert for 121 Pleasant Street, Sardinia, with a billing address of 292 Gay Street, Williamsburg. Beginning on January 16, 2008 (after appellant was done training Tracy Jodrey and after she started her term as village council member), charges began to appear, once again, on appellant's utility account. The charges billed to Shannon Robert, totaling $1,907.50, were never paid. Shannon Robert is the inverted name of appellant's estranged husband, Robert Shannon.

{¶ 24} Appellant's estranged husband denied receiving utility bills for the 121 Pleasant Street account after he moved out of the residence and moved to Williamsburg. Appellant claimed she received utility bills in 2006 and 2007 during the time when there was a break in service in her account. During that time, as utility clerk, appellant was responsible for posting utility meter readings and for billing residents for their utility usage, including herself. Cox worked in 2006, but not in 2007, and was hired to answer the phone and collect utility payments, not to perform all of appellant's duties. Mock testified that he had access to the utility computer in appellant's office only when she was in, had no way of entry if the office was closed, and did not have the protected password for the utility computer. Mock denied entering information on the utility computer or being in the office in 2006 and 2007 when appellant was not in the office. Neither the mayor nor council members had access to the utility computer.

{¶ 25} The state presented evidence that during the break in service in appellant's account, the utilities for appellant's home address were billed to a second account under the inverted name of appellant's estranged husband, and

that charges started appearing again on appellant's utility account on January 16, 2008, the exact same day the history (as generated by the utility computer) for the Shannon Robert account ended. Viewing the evidence in a light most favorable to the prosecution, we find that the foregoing circumstantial evidence, if believed, was sufficient to support a finding that the state proved the essential elements of theft in office beyond a reasonable doubt with regard to appellant receiving free utility services for her home for over 16 months between August 2006 and January 2008.

{¶ 26} Based on all the foregoing, appellant's conviction for theft in office is supported by sufficient evidence, and the trial court did not err in denying her Crim.R. 29 motion. Appellant's first assignment of error is overruled.

### Assignment of Error No. 2

{¶ 27} "The trial court erred to the prejudice of defendant-appellant when it denied her motion for acquittal on the charge of tampering with records because the evidence against her was insufficient to support a conviction, thereby denying defendant-appellant her rights to due process and a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution."

{¶ 28} Appellant challenges her conviction for tampering with records on the ground that there was no evidence she destroyed, removed, or concealed the 2006 and 2007 receipt books, nor was there evidence she tampered with the utility computer by opening a second utility account for her home using her estranged husband's name. Further, according to appellant, numerous persons had access to her office and the receipt books and used the utility computer from 2006 through 2007.

{¶ 29} Appellant was convicted of tampering with records in violation of R.C. 2913.42(A)(1), which states: "No person, knowing the person has no privilege to do so, and with the purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record."

{¶ 30} The state presented evidence that the 2006 and 2007 receipt books were under appellant's possession and control in her capacity as utility clerk. As noted earlier, while the village hired Cox to help and substitute for appellant when appellant had health issues, Cox worked only from June to December 2006 and did not work in 2007. Further, Cox was hired to answer the phone and collect utility payments, not to perform all of appellant's duties. Mock testified that he was never in appellant's office when she was not there, nor did he have a way of entry if appellant's office was closed. Jodrey, the new village fiscal officer and utility clerk, discovered the 2006 and 2007 receipt books were missing after a

customer came in to get his deposit back. Jodrey became the village fiscal officer and utility clerk after appellant resigned from the positions to begin her term as council member in January 2008. Jodrey did not discover the books were missing until after appellant was done training her. The books were never found.

{¶ 31} The state also presented evidence that a utility account for 121 Pleasant Street, Sardinia, appellant's home address, with a billing address of 292 Gay Street, Williamsburg, the address of appellant's estranged husband, was opened on July 19, 2006, under the name of Shannon Robert, the inverted name of the estranged husband. Appellant's estranged husband testified that he did not put the utility account of 121 Pleasant Street in his name in July 2006 nor did he give anyone permission to do so. Although appellant continued to live at the 121 Pleasant Street address in 2006 and 2007 and received utility services from the village during that period (according to her own testimony), the utility account under her name indicates a break in service from August 16, 2006, to January 16, 2008. Beginning on January 16, 2008, charges began to appear, once again, on the utility account under her name. As utility clerk, appellant had access to the utility computer and to her utility account in 2006 and 2007. She also had access to the utility computer while training Jodrey the first two weeks of January 2008.

{¶ 32} Appellant claimed that she received utility bills in 2006 and 2007, during the period when there was a break in service in her account, but could not pay all of them. She could not explain how a charitable organization's check issued to her to help with her utility bills was posted on her estranged husband's account. Mock testified that he had access to the utility computer in appellant's office only when she was in, had no way of entry if the office was closed, and did not have the protected password for the utility computer. Mock denied entering information on the utility computer or being in the office in 2006 and 2007 when appellant was not in the office. Neither the mayor nor council members had access to the utility computer.

{¶ 33} Viewing the evidence in a light most favorable to the prosecution, we find that the foregoing circumstantial evidence, if believed, was sufficient to support a finding that the state proved the essential elements of tampering with records beyond a reasonable doubt, to wit, appellant tampered with the utility computer and with the 2006 and 2007 receipt books. Appellant's conviction for tampering with records is supported by sufficient evidence, and the trial court did not err in denying her Crim.R. 29 motion. Appellant's second assignment of error is overruled.

### Assignment of Error No. 3:

{¶ 34} "The trial court erred to the prejudice of defendant-appellant when it denied her motion for acquittal on the charge of identity theft because the

evidence against her was insufficient to support a conviction, thereby denying defendant-appellant her rights to due process and a fair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution."

{¶ 35} Appellant argues that her conviction for identity fraud regarding the utility account under her estranged husband's name was supported by insufficient evidence because her husband believed the utility account for 121 Pleasant Street was in both their names.

{¶ 36} Appellant was convicted of identity fraud in violation of R.C. 2913.49(B)(1), which states: "No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to * * * [h]old the person out to be the other person."

{¶ 37} The state presented evidence that in 2005, appellant's estranged husband moved out of 121 Pleasant Street, Sardinia, and moved to 292 Gay Street, Williamsburg, and that he has not had any contact with appellant since 2005. In fact, at the time of trial, appellant had had a restraining order against him for five years. At trial, the estranged husband could only vaguely remember the address of 121 Pleasant Street. While he testified the account at that address "was in both of our names [in 2006], as far as I understood," he also testified that he did not put the utility account for 121 Pleasant Street in his name in July 2006, nor did he give anyone permission to do so. He denied knowing that the utility bills for 121 Pleasant Street were in his name in 2006 and 2007, and he denied receiving them. As utility clerk, appellant was responsible for billing customers. The estranged husband denied any involvement with regard to the village utility system.

{¶ 38} Incorporating the circumstantial evidence discussed under the second assignment of error, and viewing the evidence in a light most favorable to the prosecution, we find that the foregoing circumstantial evidence, if believed, was sufficient to support a finding that the state proved the essential elements of identity fraud beyond a reasonable doubt, to wit, appellant used her estranged husband's identity and personal information to open a second utility account for her 121 Pleasant Street address from July 19, 2006, to early January 2008 for the purpose of obtaining free utility services during that period and for that address.

{¶ 39} Appellant's conviction for identity fraud is supported by sufficient evidence, and the trial court did not err in denying her Crim.R. 29 motion. Appellant's third assignment of error is overruled.

Judgment affirmed.

BRESSLER and RINGLAND, JJ., concur.