[Cite as *State v. Perkins*, 2013-Ohio-3409.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


STATE OF OHIO,                                :

    Plaintiff-Appellee,                   :               CASE NO.   CA2012-09-012

    - vs -                                       :               O P I N I O N
                                                                8/5/2013
                                                 :

CARL PERKINS,                                :

    Defendant-Appellant.            :


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 12-CR-10958


Martin P. Votel, Preble County Prosecuting Attorney, Eric E. Marit, Preble County Courthouse, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellee

McClain Anastasi, LLC, Brandon Charles McClain, 70 Birch Alley, Suite 240, Beavercreek, Ohio 45440, for defendant-appellant


**PIPER, J.**

{¶ 1}   Defendant-appellant, Carl Perkins, appeals his conviction and sentence in the Preble County Court of Common Pleas for possession of marijuana.

{¶ 2}   On June 1, 2012, Trooper Shaun Smart initiated a traffic stop after he saw a white Buick Enclave make an unsafe lane change on Interstate 70.  The vehicle had four occupants, one of whom was Perkins, who was the front seat passenger.  The other

occupants included the driver, Michael Robinson, and backseat passengers Helaman Telles and Esteban Sanchez. Trooper Smart, who is an experienced interdiction officer, detected a strong odor of raw marijuana, and asked Robinson to exit the vehicle until backup arrived. Trooper Tip Vonsey arrived as backup, and Troopers Smart and Vonsey had each of the other three occupants exit the vehicle. Trooper Smart then searched the vehicle and located marijuana debris in the console, a cellular phone belonging to Perkins, boxes and bags containing marijuana, and two large bricks of marijuana weighing between 25-30 pounds each.

{¶ 3} Perkins claimed to have no knowledge of the marijuana, and instead claimed that he was only in the vehicle because Robinson asked him to ride along while he picked up a friend from the airport. Perkins and Robinson, who are both from Pennsylvania, offered no explanation as to why they were picking up someone from a Chicago airport, which was approximately a seven hour-drive from their homes.

{¶ 4} Perkins was indicted on one count of possession of marijuana. Perkins pled not guilty to the charge, and the matter proceeded to a two-day trial. The jury found Perkins guilty, and the trial court sentenced him to an eight-year-mandatory term. Perkins now appeals his conviction and sentence, raising three assignments of error.

{¶ 5} Assignment of Error No. 1:

{¶ 6} MR. PERKINS [sic] CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE PRESENTED AT TRIAL BY THE PROSECUTION.

{¶ 7} Perkins argues in his first assignment of error that his conviction is not supported by sufficient evidence.

{¶ 8} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Wilson,* 12th Dist. Warren No. CA2006-01-

007, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds. The credibility of witnesses is primarily a determination for the trier of fact, who is in the best position to observe the witnesses' demeanor, gestures and voice inflections. *State v. Benson*, 12th Dist. Butler No. CA2009-02-061, 2009-Ohio-6741.

{¶ 9} Perkins focused at trial and on appeal on the lack of direct evidence such as fingerprints, DNA, or traceable profits linking him to the marijuana. However, a conviction can be based on circumstantial evidence alone. *State v. Shannon,* 191 Ohio App.3d 8, 2010-Ohio-6079, ¶ 10 (12th Dist.). Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind. *State v. Ortiz-Bajeca,* 12th Dist. No. CA2010-07-181, 2011-Ohio-3137. Circumstantial evidence and direct evidence inherently possess the same probative value. *Id.* In some cases, certain facts can only be established by circumstantial evidence, and a conviction based thereon is no less sound than one based on direct evidence. *Shannon.* In fact, circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence. *State v. Ballew,* 76 Ohio St.3d 244, 249 (1996).

{¶ 10} Perkins was convicted of possession of marijuana, in violation of R.C. 2925.11(A)(C)(3)(g), which states,

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> (3) If the drug involved in the violation is marihuana or a

compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of possession of marihuana. The penalty for the offense shall be determined as follows:

(g) If the amount of the drug involved equals or exceeds forty thousand grams, possession of marihuana is a felony of the second degree, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the second degree.

{¶ 11} According to R.C. 2901.22(B), "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2925.01(K) defines possess or possession as "having control over a thing or substance, but [possession] may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. Constructive possession exists when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession. *State v. Gaefe,* 12th Dist. Clinton No. CA2001-11-043, 2002-Ohio-4995, ¶ 9. Dominion and control can be proven by circumstantial evidence alone. *Id., see also State v. Contreras,* 12th Dist. Butler No. CA2004-07-181, 2006-Ohio-1894.

{¶ 12} After viewing the evidence in a light most favorable to the prosecution, we find that the jury could have found that Perkins knowingly obtained or possessed the marijuana. Perkins argues that there is insufficient evidence because he was unaware that the drugs were in the vehicle. Perkins testified in his own defense that he only went with Robinson in order to help him pick up someone from the airport. Perkins testified that he agreed to go to Chicago because he had never been and did not have other plans for the day, and that he never questioned Robinson as to why they were driving seven hours from Pennsylvania to

Illinois to pick up someone from the airport. Perkins testified that he listened to music and watched a movie on his IPod as Robinson drove to and from Chicago, and that he was unaware of any drug-related conversations. Perkins also testified that he was essentially unemployed so that he could help care for his six children, and earned money helping his girlfriend sell baked goods at a local flea market. Perkins also testified that he had a prior conviction for trafficking in cocaine, but had not sold drugs since the conviction seven years prior to his arrest.

{¶ 13} The state presented testimony and evidence that directly contradicted Perkins' assertion that he did not know that the drugs were in the vehicle. Trooper Smart, who is an experienced interdiction officer who has executed "several thousand" traffic stops, testified that he stopped the vehicle for an unsafe lane change, and approached the passenger-side of the vehicle. Trooper Smart stated that as soon as the passenger-side window was rolled down, he smelled the odor of marijuana. He described the smell as "strong. Immediately apparent. Very obvious that it was raw, not burnt." Trooper Smart later testified that "the odor of marijuana was so overwhelming that at no point was there ever any question that there was raw marijuana in this car." This testimony indicates that Perkins, as a passenger in the vehicle, would have been exposed to the "overwhelming" odor of marijuana and would have known of its existence.

{¶ 14} Trooper Smart also testified that he noticed immediately that the driver and two backseat passengers were nervous, but that Perkins would not break eye contact and looked at him in an "unfriendly," "belligerent," and "unnerving" way. Trooper Smart testified that he spoke to Robinson who stated that the group was coming from the Argosy Casino in Lawrenceburg, Indiana. Once Trooper Vonsy arrived to provide backup, the troopers had each of the passengers exit the vehicle. Trooper Smart testified that as the passengers were leaving the car, he could see marijuana residue in the car. In total, Trooper Smart found an

open bottle of vodka in the driver's door, marijuana debris in the console, five cellular phones, a can of Lysol, the two large bricks of marijuana, as well as other boxes and bags of marijuana. In total, 103 pounds of marijuana were seized from the vehicle, which had a street value between $225,000 and $500,000. Trooper Smart testified that the drugs in the console area were in plain view, as the console was uncovered. Also, the large containers of marijuana were in the back area of the vehicle, which was also uncovered. This evidence indicates that Perkins would have been aware of the fact that there was a large amount of marijuana in the vehicle.

{¶ 15} Despite Perkins' assertion at trial that he had not dealt drugs or been involved in drug sales since his conviction seven years prior to his arrest, the state presented evidence that Perkins' phone contained photographs indicating his involvement in the drug trade. The police performed a search of Perkins' cell phone and discovered several pictures of large amounts of cash, as well as pictures of marijuana and other drug paraphernalia. Perkins' testimony does not explain how or why his phone contained multiple pictures of large amounts of cash, quantities of marijuana, and other drug paraphernalia, and the jury reasonably inferred that such large amounts of cash could not have been earned selling baked goods at the flea market.

{¶ 16} Deputy Sheriff Joseph Renner also testified. Deputy Renner is the Preble County Jail Administrator, and performs work with the computer network and software system in the jail. Deputy Renner testified that while Perkins was incarcerated at the jail, he made several phone calls that were recorded through a software program. During phone calls, Perkins can be heard stating that he was the "low man on the totem pole," that he wanted to know what Robinson wanted him to say about their circumstances, that they were foolish to have traveled on Interstate 70, and that they were fortunate that the stop was performed in Ohio because Indiana has a zero-tolerance policy on drug-related offenses.

These statements indicate that Perkins recognized his place in the drug transaction, and was aware of the consequences of the decisions made during the drug transaction.

{¶ 17} Esteban Sanchez testified to the details of the drug transaction that was in progress at the time Trooper Smart pulled the vehicle over. Sanchez testified that the parties involved in the transaction were Telles, himself, Perkins and Robinson. His role was to make sure that Telles did not get robbed during the transaction. Sanchez explained that the drug supplier was located in Chicago, Illinois, and agreed to "front" the drugs to Robinson and Perkins, who would then deliver the marijuana to Pennsylvania for sale and distribution. Sanchez and Telles agreed to take the money back to Chicago to pay the supplier, and to then return to their native Mexico.

{¶ 18} Sanchez testified that he went to Chicago and met Telles at a motel. Sanchez stated that Perkins and Robinson were with Telles when he met them at the motel, and that before that time he did not know Robinson or Perkins. Sanchez testified that the four men stayed the night at the motel and that the next morning, he and Perkins waited in the parking lot of a McDonalds while the drugs were being loaded into the vehicle. Once Sanchez and Perkins rejoined Telles and Robinson, the four drove from Chicago into Indianapolis and then into Ohio.

{¶ 19} Sanchez testified that during the travel, Robinson stated that there would be $90,000 waiting at his house. Sanchez also stated that the four talked about another possible drug transaction in the coming week. Sanchez testified that Perkins heard the conversation, and was not listening to music in any manner when the conversation occurred. Sanchez also stated that at no time did the group stop at a casino during their travels. This evidence, when viewed in a light most favorable to the prosecution shows that Perkins was an active member of the drug transaction, and that he knew that there were drugs in the vehicle at all times.

{¶ 20} The jury chose not to believe Perkins, and instead found the state's witnesses credible. As the trier of fact, and the ultimate decider of credibility, determining which story was more plausible was within the jury's province, and we will not disturb that decision. As such, Perkins' first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY PERMITTING THE ADMITTANCE OF EVIDENCE, OVER THE TRIAL COUNSEL'S OBJECTION, WHICH WAS UNDULY PREJUDICIAL AND INFLAMMATORY TO MR. PERKINS.

{¶ 23} Perkins argues in his second assignment of error that the trial court abused its discretion in admitting the photographs of large amounts of cash, marijuana, and drug paraphernalia that were found on his phone.

{¶ 24} "It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court." *State v. Gray,* 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 25, citing *In re Bays,* 12th Dist. Warren No. CA2003-02-026, 2004-Ohio-915, ¶ 7. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Issa,* 93 Ohio St.3d 49, 64 (2001). An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Barnes,* 94 Ohio St.3d 21, 23 (2002).

{¶ 25} According to Evid.R. 403(A), "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Perkins argues that any probative value the photographs had was outweighed by their prejudicial impact and were only meant to "inflame the jury by creating a false sense of or belief that Mr. Perkins was a high level marijuana

trafficker who made big profits, despite Mr. Perkins being charged with only possession of marijuana." We disagree.

{¶ 26} Perkins testified in his own defense and stated that he had not dealt drugs since his conviction seven years prior to his arrest in Ohio. However, the jury was free to infer from the photographs that Perkins had in fact been involved in the drug trade, given the large amount of cash, drugs, and drug paraphernalia depicted in the photographs. The jury was also free to infer that Perkins' statement that he earned money from helping his girlfriend sell baked goods at a local flea market was incredulous given the large amount of cash depicted in the photographs.

{¶ 27} The photographs were probative because they spoke directly to Perkins' claim that he did not participate in drug transactions, did not associate with drug dealers, and had not been involved in the drug trade for seven years. The photographs, however, were not unduly prejudicial to Perkins simply because they incriminated him. As such, Perkins' second assignment of error is overruled.

{¶ 28} Assignment of Error No. 3:

{¶ 29} MR. PERKINS WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO THE SIXTH AMENDMENT OF THE UNITED STATES OF CONSTITUTION. [sic]

{¶ 30} Perkins argues in his final assignment of error that he was denied his right to effective assistance of counsel because his trial counsel failed to object to the presentation of multiple boxes of the seized marijuana and to the fact that the evidence was left in the courtroom throughout the duration of the trial.

{¶ 31} The Sixth Amendment pronounces an accused's right to effective assistance of counsel. Warning against the temptation to view counsel's actions in hindsight, the United States Supreme Court has stated that judicial scrutiny of an ineffective assistance claim must

be "highly deferential* * *." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052 (1984). A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the appellant must overcome "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶ 32} To demonstrate ineffective assistance of counsel, an appellant must establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers,* 12th Dist. Fayette No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing *Strickland* at 689. Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." *Strickland* at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 33} During the state's case-in-chief, Trooper Smart testified regarding the 103 pounds of marijuana seized from the vehicle in which Perkins was a passenger. The record indicates that before Trooper Smart testified, the marijuana was stored in the back of the court room. During Trooper Smart's testimony, he and the prosecutor moved the marijuana to the front of the court room and then showed the jury how the marijuana was originally packaged and how the packages had been altered in order to perform testing. The marijuana stayed in the court room throughout the rest of the proceedings without objection from defense counsel. However, we do not find that the failure to object resulted in either deficient representation or prejudice.

{¶ 34} Instead, having the marijuana in the court room was trial strategy. Perkins asserted throughout trial that he did not know that the vehicle in which he was a passenger

contained 103 pounds of marijuana. During opening arguments, defense counsel stated, "Ladies and gentlemen of the jury, using your common sense is a really good idea. How many of you can tell that the marijuana is in the room with us right now? Not one. Look there. Now if you can't smell it and it's right there, this man will say he can't smell it and it will be a reasonable statement." Defense counsel did not object to the presence of the marijuana because he hoped that the jury would believe that Perkins could have ridden in the car without being aware of the presence of the marijuana in the car because they themselves were unable to smell the marijuana. The fact that the jury chose not to believe Perkins' story, however, does not render Perkins' assistance of counsel ineffective. Moreover, the marijuana was that actually seized from the vehicle in which Perkins was a passenger, and the state had the right and duty to present evidence regarding the charges against Perkins.

{¶ 35} Perkins argues that "the fact finder was likely inflamed by the amount of drugs, and unlikely to consider the fact that the prosecution did not sufficiently connect Mr. Perkins to these large amounts of drugs being displayed." However, Perkins' argument regarding what was "likely" does not demonstrate a reasonable probability that, but for the marijuana being in the court room, the result of the proceeding would have been different. Simply stated, Perkins has failed to demonstrate that he received ineffective assistance of counsel. As such, Perkins' final assignment of error is overruled.

{¶ 36} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.

- 11 -