[Cite as *State v. Adams*, 2013-Ohio-4639.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2012-11-240 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 10/21/2013 |
| - vs - | | |
| | : | |
| RICHARD D. ADAMS, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2011-12-1979

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Repper, Pagan, Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Richard D. Adams, appeals his conviction in the Butler County Common Pleas Court for aggravated possession of drugs and possession of drugs, for which he was sentenced to five years of community control. For the reasons that follow, we affirm appellant's conviction.

{¶ 2} Appellant operates a head shop known as "Down on Main Street."[1] He resides in a portion of the head shop's premises that is separate from the business. There are two bedrooms in the residential portion of the premises. Appellant has two roommates, Doug Goens and Ryan Smith. The record is unclear as to which bedrooms were used by the various occupants, how often appellant's roommates were present, where they stored their property, and the duration of their stays at the premises.

{¶ 3} On November 11, 2011, police officers executed a search warrant at the premises. When the officers knocked on the bedroom door and announced their presence, they could hear things being moved around inside. They knocked several more times and heard a voice that said, "wait a minute." Police advised that they would not wait and would kick the door down unless they were granted entrance to the room. Once they entered the bedroom, the police saw that appellant was the only person inside. The police found mail and other documents in the bedroom that were addressed to appellant or contained his name. Police seized from the bedroom two jars containing unknown substances, a spoon that contained residue, three digital scales, and a number of blue pills and green pills. The police also found one tan pill that was in the kitchen area of the premises.

{¶ 4} Laboratory analysis determined that: (1) the two jars contained methylenedioxypyrovalerone (MDPV), a substance commonly known as bath salts, a Schedule I controlled substance; (2) the tan pill was an amphetamine tablet, a Schedule II controlled substance; and (3) the blue pills and green pills, respectively, were Alprazolam, whose brand name is Xanax, and Clonazepam, whose brand name is Klonopin, both of which are Schedule IV controlled substances.

---

1. Appellant defines a head shop as "a store that sells smoking accessories and objects associated with smoking culture." However, the term is more commonly defined as "[a] retail establishment that sells items intended for use with illegal drugs." Black's Law Dictionary 737 (8th Ed.2004).

- 2 -

{¶ 5} Appellant was indicted on one count of aggravated possession of drugs, a fifth-degree felony, which involved the MDPV found in the two jars; one count of aggravated possession of drugs, a fifth-degree felony, which involved the amphetamine tablet; and one count of possession of drugs, a first-degree misdemeanor, which involved the Xanax and Klonopin. The jury acquitted appellant on the charge of aggravated possession of drugs involving the amphetamine tablet but convicted him of the remaining charges, including the charge of aggravated possession of drugs involving the MDPV. The trial court sentenced appellant to five years of community control.

{¶ 6} Appellant now appeals, assigning the following as error:

{¶ 7} "IT WAS ERROR TO ENTER A JUDGMENT OF CONVICTION FOR COUNT I, ILLEGAL CONSTRUCTIVE-POSSESSION OF BATH SALTS."

{¶ 8} Appellant argues his conviction for aggravated possession of drugs involving MDPV or bath salts was contrary to the sufficiency and weight of the evidence. We conclude that there was ample evidence presented to support appellant's conviction on this charge and that the jury did not lose its way in finding him guilty of that offense.

{¶ 9} R.C. 2925.11(A) prohibits any person from knowingly obtaining, possessing, or using a controlled substance. R.C. 2901.22(B) states that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature" and that "a person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2925.01(K) states that "'[p]ossess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.'"

{¶ 10} Possession may be either actual or constructive. *State v. Perkins*, 12th Dist. Preble No. CA2012-09-012, 2013-Ohio-3409, ¶ 11. "Constructive possession exists when

one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession." *Id.* "Dominion and control" can be proven by circumstantial evidence alone. *Id.* The surrounding facts and circumstances of the case determine whether the accused knowingly possessed a controlled substance. *State v. Edwards,* 10th Dist. Franklin No. 05AP-400, 2006-Ohio-1344, ¶ 27. Ownership of the controlled substance need not be proven to establish constructive possession. *State v. Garrett*, 12th Dist. Clermont No. CA2008-08-076, 2009-Ohio-2806, ¶ 25. "'[E]vidence that a person was located in close proximity to readily usable drugs may be used to show that the person was in constructive possession of the drugs.'" *Id.*, quoting *State v. Harry*, 12th Dist. Butler CA2008-01-013, 2008-Ohio-6380, ¶ 48. "'The crucial issue is not whether the accused has actual physical contact with the controlled substance but, rather, whether the accused is capable of exercising dominion and control over the substance.'" *Garrett*, quoting *State v. Brooks*, 113 Ohio App.3d 88, 90 (6th Dist.1996).

{¶ 11} In this case, when the police officers executed the search warrant, appellant was found, by himself, locked in a bedroom of the premises, with the controlled substances, scales, spoons and his personal mail inside. The fact that appellant was the only person inside the bedroom with the door locked provides evidence that he had dominion and control over the illegal substances found within the room. When the police knocked on the door, they could hear someone inside the room, who turned out to be appellant, shuffling items around and asking the officers to "Wait a minute." It can be readily inferred from these facts that appellant was attempting to cover up his actions. The scales and spoons that contained residue of MDPV were out in plain view, and the bedroom where the MDPV was found was the only bedroom where mail addressed to appellant was located. The totality of the facts and circumstances present in this case establish that appellant had constructive possession of the drugs found on the premises.

{¶ 12} Appellant asserts that "[t]he critical aspect" of this case is that the state convicted him of possessing bath salts only three weeks after its criminalization and that the state failed to present evidence about whether he or someone else acquired the bath salts when it was legal to do so. He contends that the record allows for two competing and equally reasonable inferences, to wit: (1) that he or someone under his control and direction removed the bath salts from the head shop when they were criminalized and put them in a bag in a closed bin in preparation for disposing of them in some appropriate way, *or* (2) that he or someone under his control and direction intended to use, supply, or traffic the bath salts irrespective of their criminalization and hid them to achieve that goal. Appellant asserts that the record strongly favors the first inference, but our review of the record convinces us that it strongly favors the second.

{¶ 13} There is no evidence in the record from which the jury could have found that the bath salts were in the bedroom awaiting disposal. Appellant made no statement to the police in this regard and offered no testimony on this issue. The jury would have had to engage in unsupported speculation to reach this conclusion.

{¶ 14} Appellant also asserts that he should be given the benefit of a "grace period" that would allow him a reasonable amount of time to dispose of the bath salts after the possession of that substance became illegal. However, appellant had more than enough time to dispose of the bath salts if that was his intent. The possession of bath salts was criminalized as a result of House Bill 64, which was signed into law on July 15, 2011 and became effective on October 17, 2011. Therefore, appellant had between July 15, 2011 and November 11, 2011, the date of the offense, to dispose of any bath salts that were in his actual or constructive possession, yet he failed to do so. Furthermore, the General Assembly could have inserted a grace period in the statute if it believed one was necessary, but it chose not to do so, and this court may not imply or engraft one onto the statute. *See*

*generally Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, ¶ 49, 58 (the 12-year statute of limitations contained in R.C. 2305.111[C] for claims arising from childhood sexual abuse contains no tolling provision for persons with repressed memories of childhood sexual abuse; while the legislature could have included a tolling provision for repressed memory, it chose not to do so, and "[t]hat decision is a legislative prerogative that we are not permitted to overrule.").

{¶ 15} Appellant cites *State v. Murphy*, 8th Dist. Cuyahoga No. 93093, 2010-Ohio-1422, as standing for the proposition that his possession of bath salts so soon after possession of the substance was criminalized does not justify a finding that he knowingly possessed illegal drugs. However, *Murphy* discusses "involuntary" or "unwitting" possession. That is not the case here. The evidence in this case demonstrates that appellant's constructive possession of the bath salts found in his premises was anything but involuntary or unwitting, and provides a reasonable basis for appellant's convictions. Appellant was alone in the locked bedroom. Police heard the sounds of objects being moved around when they attempted to enter the room. Appellant stalled before granting police access to the room. Appellant's mail was found in the room. And the spoons and scales bearing traces of MDPV were discovered in the bedroom. These facts all support appellant's conviction for aggravated possession of drugs.

{¶ 16} Accordingly, appellant's assignment of error is overruled.

{¶ 17} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.