[Cite as *State v. King*, 2022-Ohio-3388.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2022-01-001 |
| Appellee, | : | O P I N I O N<br>9/26/2022 |
| | : | |
| - vs - | : | |
| | : | |
| STEPHANIE LEE KING, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019 CR 01168

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

Daniel E. Whiteley, Jr., for appellant.

**M. POWELL, P.J.**

{¶ 1} Appellant, Stephanie King, appeals her convictions in the Clermont County Court of Common Pleas for aggravated possession of methamphetamine, aggravated possession of morphine, and possession of a fentanyl-related compound.

{¶ 2} On November 26, 2019, King was indicted by the Clermont County Grand Jury for second-degree felony aggravated possession of drugs (methamphetamine), fifth-

degree felony aggravated possession of drugs (morphine) and fifth-degree felony possession of a fentanyl-related compound. King entered not guilty pleas and the matter proceeded to a jury trial.

{¶ 3} The trial testimony and other evidence disclosed that on July 1, 2019, Union Township Police Sergeant Rodney Combs responded to a Walmart parking lot at 3:30 a.m. to investigate a report that a male was passed out in a truck. Upon arriving at the scene, Sergeant Combs observed the truck exit the parking lot. Sergeant Combs followed and initiated a traffic stop of the truck for failing to signal a left turn. Sergeant Combs found the truck contained three occupants, consisting of a male driver, and a male and female passenger. King was sitting in the center of the truck between the two males. The sergeant contacted the driver, obtained identifying information for all three individuals, and returned to his police cruiser to check for active warrants. The sergeant discovered "multiple people," including King, were subject to active arrest warrants.

{¶ 4} By this time backup officers, including Officer Jeffrey Joehnk, had arrived on the scene to assist. While Sergeant Combs was conducting the warrants check, Officer Joehnk was observing the truck and saw King making furtive movements. Specifically, Officer Joehnk saw King "raising up off the seat" and then "going towards the floorboard." Officer Joehnk testified that he could not see King's hands, but it appeared to him that King "was getting something from her waistband area and trying to get rid of it," or conceal something. Officer Joehnk also noted that neither male made any movements at that time.

{¶ 5} Sergeant Combs wanted a K-9 unit to conduct an open-air sniff based in part on his initial observations. Officer Perkins responded with his dog, Kaos. The truck's occupants were removed from the vehicle and Kaos sniffed the truck. Kaos alerted to the passenger side door. Based upon Kaos' alert, the truck was searched. Officers then searched the vehicle and discovered what appeared to be illicit drugs inside an otherwise

empty cigarette pack. The cigarette pack was located inside a Circle K bag that was on the floorboard in the middle of the vehicle where King's feet would have been and in the area where Officer Joehnk observed King directing her furtive movements. The search also yielded a white purse in the truck bed which contained a "female makeup case" and a cell phone. Inside the makeup case the police discovered two digital scales that had a powdery residue on them consistent with methamphetamine. A black purse was also discovered in the truck bed, which contained a medicine vial with King's name on it, three cell phones, and a hypodermic needle. Officer Joehnk testified King had what appeared to be hypodermic needle marks on her arms, and photographs of the needle marks were shown to the jury and admitted at trial. Inside the truck, officers discovered "coin baggies" in plain view on the "middle of the bench seat" where King had been sitting. Officer Joehnk described the "coin baggies" as being consistent with bags used to store narcotics.

{¶ 6} The substances discovered in the cigarette pack found inside the Circle K bag were submitted for laboratory analysis. The analysis revealed that the cigarette pack contained approximately 18 grams of methamphetamine and approximately .05 grams of acetyl fentanyl, fentanyl, and morphine.

{¶ 7} Based upon the foregoing, the jury returned guilty verdicts on all three counts. The trial court sentenced King to an indefinite prison term of four to six years, imposed a mandatory fine of $7,500, and ordered King to pay court costs.

{¶ 8} King now appeals her convictions, raising the following assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} STEPHANIE KING'S CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 11} Assignment of Error No. 2:

{¶ 12} STEPHANIE KING'S CONVICTION WAS AGAINST THE MANIFEST

WEIGHT OF THE EVIDENCE.

{¶ 13} King argues that her convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 14} "A claim challenging the sufficiency of the evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 165, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). "When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 12th Dist. Clermont No. CA2021-05-019, 2022-Ohio-244, ¶ 39, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34. A reversal for insufficient evidence requires the "discharge of the defendant." *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, ¶ 30.

{¶ 15} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. When determining whether a conviction is against the manifest weight of the evidence, an appellate court "must look at the entire record, weigh the evidence and all reasonable

inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. But, even then, the determination of witness credibility is primarily for the trier of fact to decide at trial. *State v. Baker*, 12th Dist. Butler No. CA2019-08-146, 2020-Ohio-2882, ¶ 30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This court, therefore, "will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 10, citing *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43. "[A] new trial is the appropriate remedy when a reviewing court determines that a criminal conviction is against the manifest weight of the evidence." *State v. Fips*, 160 Ohio St.3d 348, 2020-Ohio-1449, ¶ 10.

{¶ 16} Given these principles, it is now well established that "[t]he concepts of sufficiency of the evidence and weight of the evidence are legally distinct." *State v. Fannin*, 12th Dist. Warren No. CA2020-03-022, 2021-Ohio-2462, ¶ 47, citing *State v. Wright*, 12th Dist. Butler No. CA2012-08-152, 2014-Ohio-985, ¶ 10. That is to say, "[a] verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *State v. Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, ¶ 80, citing *State v. Robinson*, 162 Ohio St. 486, 487 (1955). Because of this, "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Perkins*, 12th Dist. Fayette No. CA2009-10-019, 2010-Ohio-2968, ¶ 9. This is because legally sufficient evidence is required to take a case to the jury. *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43. Therefore, although challenges to the

sufficiency of the evidence and the manifest weight of the evidence require the application of quantitatively and qualitatively different concepts, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19; *State v. August*, 12th Dist. Warren No. CA2018-12-136, 2019-Ohio-4126, ¶ 48.

{¶ 17} As noted above, King was convicted of three felony drug offenses all in violation of R.C. 2925.11(A). Pursuant to that statute, "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2901.22(B) indicates a person acts "knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

{¶ 18} Whether a person was aware of an object's presence may be established through circumstantial evidence. *State v. York*, 12th Dist. Butler No. CA2021-11-147, 2022-Ohio-2457, ¶ 27, citing *State v. Whitehead*, 4th Dist. Scioto No. 20CA3931, 2022-Ohio-479, ¶ 90. "Circumstantial evidence is proof of certain facts and circumstances in a given case, from which the jury may infer other, connected facts, which usually and reasonably follow according to the common experience of mankind." *State v. Stringer*, 12th Dist. Butler No. CA2012-04-095, 2013-Ohio-988, ¶ 31. Therefore, "[a]bsent a defendant's admission regarding his knowledge, whether a person acts knowingly can only be determined from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Hilton*, 12th Dist. Butler No. CA2015-03-064, 2015-Ohio-5198, ¶ 20. "Whether a defendant knowingly possessed a controlled substance is a question of fact for the trier of fact." *York* at ¶ 27, citing *State v. Reyes*, 6th Dist. Wood No. WD-02-069, 2004-Ohio-2217, ¶ 20.

{¶ 19} The terms "possess" and "possession" are defined by R.C. 2925.01(K) to

mean "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "Possession may be constructive or actual." *State v. Bollheimer*, 12th Dist. Warren No. CA2019-02-014, 2020-Ohio-60, ¶ 33. "Actual possession means appellant had the items within his immediate, physical control." *State v. Banks*, 182 Ohio App.3d 276, 2009-Ohio-1892, ¶ 10 (12th Dist.). "Constructive possession exists when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession." *State v. Lee*, 12th Dist. Fayette Nos. CA2020-09-014 and CA2020-09-015, 2021-Ohio-2544, ¶ 21. "Constructive possession may be proven by circumstantial evidence alone." *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 22. Therefore, "[a]bsent a defendant's admission, the surrounding facts and circumstances, including a defendant's actions, are evidence that a trier of fact may consider in determining whether the defendant had constructive possession." *State v. Fester*, 12th Dist. Clermont No. CA2019-05-043, 2021-Ohio-410, ¶ 58.

{¶ 20} There was ample evidence in the record from which the jury could have concluded that King constructively possessed the drugs found in the cigarette pack. Officer Joehnk testified that he observed King making furtive movements in the middle of the vehicle, which he described as consistent with "getting something from her waistband area and trying to get rid of it." The officer further testified he did not see any similar movements from the driver or male passenger and noted that he found the Circle K bag, which contained the cigarette pack, on the floorboard where King was sitting. Additionally, the officer explained that King had an active warrant for her arrest, and that oftentimes, people with warrants "believe that they're going to go to jail," and "they're not wanting to take that stuff down to them to the [jail]," "[s]o a good place to get rid of it's inside of a vehicle[.]"

{¶ 21} Officer Joehnk further testified that items related to drug possession were discovered during the search of the truck, including coin baggies, digital scales with suspected methamphetamine residue, and a hypodermic needle. The officer testified the coin baggies were discovered inside the truck where King was sitting, the digital scales were found in a makeup case located inside a purse in the truck bed, and the hypodermic needle was found in a purse also containing a prescription vial with King's name on it. Purses and makeup cases are typically associated with females, and it is undisputed that King was the only female in the vehicle at the time of the traffic stop.

{¶ 22} If believed, we conclude the above testimony establishes sufficient circumstantial evidence that King was conscious of the contraband's presence inside the cigarette pack and was able to exercise dominion and control of the methamphetamine, morphine, and fentanyl-related compound. *See State v. Moore*, 12th Dist. Warren No. CA2014-10-121, 2015-Ohio-2466, ¶ 22-23. Although King argues the contraband at issue could have belonged to either the driver or male passenger, who were also in the vehicle at the time it was stopped, "[o]wnership of the controlled substance need not be proven to establish constructive possession." *State v. Adams*, 12th Dist. Butler No. CA2012-11-240, 2013-Ohio-4639, ¶ 10. Thus, whether the contraband "belonged" to King does not negate that she knowingly and constructively possessed the drugs in violation of R.C. 2925.11(A).

{¶ 23} Moreover, simply because other individuals were inside the vehicle does not render King's convictions against the manifest weight of the evidence. *See State v. Wright*, 12th Dist. Butler No. CA2004-05-127, 2004-Ohio-2811, ¶ 13-18. As noted above, the jury heard testimony regarding the other two individuals in the car, including that the male passenger possessed a needle at the time of the stop and that the initial dispatch was related to a male passenger passed out in the truck. It is evident from the jury's guilty verdict that it gave greater weight to the testimony regarding the location of the contraband, as well

as King's furtive movements near her waistband and the floorboard, and her connection to other items discovered during the search relating to drug possession. "We must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence." *Id.* at ¶ 15, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶ 24} In light of all of the foregoing, and after carefully reviewing the record, we find that the jury did not lose its way in finding King guilty of aggravated possession of methamphetamine, aggravated possession of morphine, and possession of a fentanyl-related compound. Having found that King's convictions were not against the manifest weight of the evidence, we necessarily conclude the state presented sufficient evidence to support the jury's finding of guilty. *Jones*, 2013-Ohio-150 at ¶ 19.

{¶ 25} King's first and second assignments of error are overruled.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DECLINED TO GRANT KING'S REQUEST FOR A MISTRIAL.

{¶ 28} In her third assignment of error, King argues the trial court abused its discretion when it denied her request for a mistrial.

{¶ 29} "A trial court should not grant a motion for a mistrial unless it appears that some error or irregularity has been injected into the proceeding that adversely affects the substantial rights of the accused, and as a result, a fair trial is no longer possible." *State v. Thornton*, 12th Dist. Clermont No. CA2008-10-092, 2009-Ohio-3685, ¶ 11, citing *State v. Reynolds*, 49 Ohio App.3d 27, 33 (2d Dist.1988). The trial court's decision to grant or deny a mistrial rests within its sound discretion, and this court will not disturb such a determination absent an abuse of discretion. *State v. Stevens*, 12th Dist. Butler No. CA2009-01-031, 2009-Ohio-6045, ¶ 11, citing *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 92;

*Thornton* at ¶ 11. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 30} King moved for a mistrial during the state's direct examination of Officer Joehnk. During its direct examination, the state presented evidence relating to a purported ledger and $734 found in the white purse. King moved for a mistrial on several grounds, including that the ledger and money were evidence of drug trafficking and should not have been admitted as evidence of the possession offenses with which King was charged. After hearing argument from the state and King's counsel, the trial court denied King's request for a mistrial, but excluded any evidence relating to the money and ledger because it was improper evidence pursuant to Evid.R. 404(B). Because any evidence relating to drug trafficking was improper, the trial court directed the state not to present any additional evidence or theory related to drug trafficking. The trial court also issued a limiting jury instruction, wherein it instructed the jury to disregard any questions or evidence about the money or ledger; not to consider the testimony that was previously provided relating to the ledger and money; and not to speculate as to why the trial court decided to exclude the evidence. In its final charge to the jury, the trial court reiterated that "[s]tatements or answers that were stricken by the [c]ourt or which you were instructed to disregard are not evidence and must be treated as though you had not heard them."

{¶ 31} King asserts the curative instruction was insufficient and the trial court should have declared a mistrial because, once the jury heard the evidence relating to drug trafficking, "the trial was tainted to an extent that King could not receive a fair trial." As this court has observed, a trial court's decision as to whether to grant a mistrial or issue a curative instruction to the jury is accorded great deference, as the trial court is most familiar with the evidence and background of the case and has observed the jurors' reaction to the

testimony or argument that caused the request for the mistrial. *Thornton* at ¶ 14, citing *State v.* Kersey, 12th Dist. Warren No. CA2008-02-031, 2008-Ohio-6890.

{¶ 32} After our review, we find the trial court's issuance of the curative instruction, as opposed to granting King's motion for a mistrial, was not unreasonable, arbitrary, or unconscionable. *See Hamilton v. Kuehne*, 12th Dist. Butler No. CA97-10-198, 1998 Ohio App. LEXIS 4168, *16-17 (Sept. 8, 1998). It is well established that curative instructions, like the instruction provided by the trial court here, are presumed to be an effective way to remedy errors that occur during trial. *State v. Tyree*, 12th Dist. Fayette No. CA2016-09-012, 2017-Ohio-4228, ¶ 16. "A jury is presumed to follow instructions given by the trial court." *State v. Carpenter*, 12th Dist. Butler No. CA2005-11-494, 2007-Ohio-5790, ¶ 20. Furthermore, such specific curative instructions are generally presumed to be effective. *See State v. Ferguson*, 5 Ohio St. 3d 160, 163 (1983). There is nothing in the record indicating the jury in this case failed to follow the curative instruction given by the trial court or that it was ineffective in remedying the state's error.

{¶ 33} Accordingly, King's third assignment of error is overruled.

{¶ 34} Assignment of Error No. 4:

{¶ 35} STEPHANIE KING WAS DEPRIVED OF HER SIXTH AMENDMENT RIGHT TO THE EFFECTIVE REPRESENTATION OF COUNSEL AT TRIAL.

{¶ 36} King argues that her trial counsel was ineffective because he (1) failed to advise her that she faced a mandatory prison term before rejecting a plea deal and proceeding to trial, (2) volunteered that King was a drug user and had a drug problem, (3) failed to object to inadmissible and prejudicial testimony, (4) failed to object to "inappropriate" arguments by the state, and (5) failed to file an affidavit of indigency.

{¶ 37} To establish ineffective assistance of counsel, appellant must show (1) deficient performance by counsel, that is, performance falling below an objective standard

of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052 (1984); *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 62. A "reasonable probability" is a probability that is "sufficient to undermine confidence in the outcome." *Strickland* at 694. An appellate court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective. *Id*. at 689. The failure to satisfy either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 39.

**{¶ 38}** King initially argues her counsel was ineffective because he failed to advise her that a conviction would result in a mandatory prison term. Due to this failure, King claims she rejected a plea offer from the state because she was "under the impression that she could receive community control even if the jury convicted her as charged." The record reflects the state made two plea offers in this case, both of which were discussed on the record the day of trial. In its first offer, the state offered to dismiss the underlying case entirely if she pled to "some" of the charges in two other cases before the trial court and a third case in Clermont County. The record indicates the three cases involved felonies of the second, third, and fifth degrees. The second plea offer involved reducing count one of the indictment to a third degree felony and similarly amending the charge in her third Clermont County case.

**{¶ 39}** Upon inquiry by the trial court, King indicated she did not wish to enter into a plea agreement because she maintained her innocence and wanted to proceed to trial. At that point, the trial court informed King that she faced a maximum prison term of eight to twelve years, but incorrectly stated count one carried a presumption of a prison sentence, as opposed to a mandatory prison sentence. King's counsel did not correct the incorrect

statement by the trial court and later stated he believed there was a presumption of a prison sentence, but that he needed to research the issue.

{¶ 40} The state concedes defense counsel failed to correct the trial court's misstatement but argues this does not rise to the level of ineffective assistance of counsel. After a review, we agree. As an initial note, a counsel's failure to inform his client of the sentencing possibilities does not necessarily require reversing the conviction on an ineffective assistance of counsel claim. *See State v. Wenker*, 9th Dist. Summit No. 25185, 2011-Ohio-786, ¶ 27, citing *State v. Lawson*, 8th Dist. Cuyahoga No. 69899, 1996 Ohio App. LEXIS 5631, *5-6 (Dec. 12, 1996); *see also State v. Lewis*, 10th Dist. Franklin No. 97APA09-1263, 1998 Ohio App. LEXIS 3429, *10 (July 21, 1998).

{¶ 41} Moreover, even assuming counsel's performance was deficient in this regard, we find King cannot establish that "but for" counsel's alleged error, the outcome would have been different and more favorable for King. First, the record does not support King's contention that she rejected the state's plea offers because she believed she would be sentenced to community control. Rather, King made clear that she wished to proceed to trial because she was innocent.

{¶ 42} Additionally, even if King believed she would be sentenced to community control if convicted, the record does not reflect a reasonable basis for this belief. During the discussions before trial, the trial court informed King that to rebut the presumption of a prison sentence, she was required to prove the instant offense was less serious and that she was less likely to reoffend. Whether King could rebut the presumption is speculative and the record does not suggest that she would have been successful in doing so. Specifically, at the sentencing hearing, the trial court noted that it had reviewed the presentence-investigative report, which detailed King's "long history" of prison sentences in both Florida and Ohio, including a prison sentence of a "couple of years" imposed by the

same trial judge in 2015 for a drug offense. The court indicated this has been a lifelong struggle for King, but that she has been "given opportunities * * * to try to right this ship." Based upon her extensive criminal history, the trial court stated that it could not "impose the minimum [mandatory] sentence, because quite frankly, [her] history does not warrant that" given her "numerous opportunities." The trial court further noted that, despite making some strides in her sobriety, "these were serious charges."

{¶ 43} When considering the trial court's statements above, there is nothing in the record to suggest the trial court would have imposed community control, even if it had the opportunity to do so. Accordingly, King cannot establish any prejudice from counsel's failure to advise her of the mandatory prison sentence accompanying a conviction of count one.

{¶ 44} King next maintains her counsel was ineffective because he volunteered that King was a drug user and had a drug problem. According to King, this may have been sound strategy in a drug trafficking case but was "a misguided strategy" in a possession case. King takes specific issue with counsel's comments during voir dire that King was a drug user and his elicitation on cross-examination that King admitted possession of the hypodermic needle. Evidence that King was an active drug user establishes a motive for drug possession rendering this evidence relevant and admissible. Counsel must have anticipated that the state intended to introduce evidence relating to King's drug use, including the discovery of the hypodermic needle in a purse containing a prescription bottle in King's name and the alleged needle marks on her arms, and sought to lessen the impact of such evidence by conceding at the outset that King was a drug user. This is consistent with counsel's trial strategy that King should not be convicted of drug possession merely because she was a user.

{¶ 45} As conceded by King, counsel's comments and questioning fall squarely within trial strategy. This court has repeatedly held that trial strategy, even debatable

- 14 -

strategy, is not a basis for finding ineffective assistance of counsel. *State v. Bradford*, 12th Dist. Warren No. CA2010-04-032, 2010-Ohio-6429, ¶ 98; *State v. Wood*, 12th Dist. Madison No. CA2018-07-022, 2020-Ohio-422, ¶ 28. It is not the role of a reviewing court to second-guess trial strategy. *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 52. As such, we conclude King has failed to demonstrate that her trial counsel's performance was deficient in the presentation of her defense in this regard. This is because it is not ineffective assistance of counsel simply because the trial strategy was unsuccessful or there was another possible, better strategy available. *State v. Woody*, 12th Dist. Clinton No. CA2019-01-001, 2020-Ohio-621, ¶ 11, citing *State v. Davis*, 12th Dist. Butler No. CA2012-12-258, 2013-Ohio-3878, ¶ 25.

{¶ 46} We also reject King's claim that her trial counsel was ineffective because he failed to object to evidence that was inadmissible pursuant to Evid.R. 403 and 404, including the cash, paper ledger, and four cell phones, as well as testimony regarding King's needle marks. Although King mentions Evid.R. 403 and 404 in passing, she makes no cogent argument directed to why these rules render this evidence inadmissible. Regarding Evid.R. 403, King makes a conclusory claim that the evidence was "highly prejudicial" but fails to suggest to us why the "probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice." Citing *State v. Jones*, 1st Dist. Hamilton No. C-170647, 2020-Ohio-281, King argues that "evidence of past drug usage [is] absolutely inadmissible under Evidence Rule 404(B)." However, *Jones* did not address whether evidence of past drug usage is inadmissible under Evid.R. 404(B) but held that evidence of a murder victim's association with drugs was irrelevant in the defense of a murder offense. King engages in no analysis of Evid.R. 404(B) in arguing the evidence would have been excluded under the rule had counsel objected on that basis. We decline King's invitation to construct an argument on her behalf regarding the inadmissibility of this evidence under Evid.R. 403 and

404(B). *See In re Adoption of R.M.T.*, 12th Dist. Warren Nos. CA2017-12-177 and CA2017-12-178, 2018-Ohio-1691, ¶ 14; *see also State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 19 (noting that an appellate court is not obligated to "formulate legal arguments on behalf of the parties").

{¶ 47} As discussed in King's third assignment of error, the record reflects King's trial counsel objected to testimony regarding the ledger and cash, and moved for a mistrial on the basis that the evidence was inadmissible evidence related to drug trafficking. The trial court denied counsel's motion for a mistrial, but excluded the cash and ledger from evidence, issued a curative instruction to the jury that it should not consider such evidence, and admonished the state from further referencing any evidence related to drug trafficking. The record reflects the state complied with the trial court's instruction, and there is no evidence the jury did not follow the trial court's instruction. As such, King cannot establish that, but for counsel's failure to more vigorously object to the evidence related to drug trafficking, i.e., the ledger, cell phones, and cash, the outcome of the trial would have been different.

{¶ 48} Regarding the needle marks, at least one Ohio court has held that, where a defendant is charged with the possession of drugs, a trial counsel's failure to object to testimony regarding needle marks on the defendant's arms does not amount to ineffective assistance of counsel. *See State v. Pariscau*, 8th Dist. Cuyahoga No. 63023, 1993 Ohio App. LEXIS 3515, *24 (July 15, 1993). This is because a claim for ineffective assistance of counsel fails where the appellant fails to show there is a reasonable probability that the results of the trial would have been different if this evidence were not offered or if counsel objected to its introduction. *Id.* Here, the record reveals more than sufficient credible evidence in support of King's conviction, and she has failed to demonstrate that the jury's verdict would have been different if counsel had objected to the officer's testimony regarding

her "needle marks." Accordingly, King fails to demonstrate how she was prejudiced by the introduction of this evidence.

{¶ 49} King next argues her trial counsel was ineffective for failing to object to various "inappropriate arguments by the prosecutor." First, King claims counsel should have objected to the state's comments during its closing argument that officers' situational awareness keeps officers safe and implying that defense counsel was trying to deceive the jury.

{¶ 50} The trial court instructed the jury that opening statements and closing arguments are not evidence. Consequently, it is within counsel's realm of tactical decision-making to choose to avoid interrupting closing arguments to voice an objection. *State v. Brown*, 12th Dist. Warren No. CA2002-03-026, 2002-Ohio-5455, ¶ 22, citing *State v. Keene*, 81 Ohio St.3d 646, 668 (1998). Therefore, the failure to object to prosecutorial misconduct "does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision." *State v. Gumm*, 73 Ohio St.3d 413, 428 (1995). Additionally, it is well established that a prosecutor's latitude in closing argument is wider on rebuttal where the prosecutor has room to respond to closing arguments of defense counsel. *State v. Farwell*, 12th Dist. Clermont No. CA2001-03-041, 2002 Ohio App. LEXIS 1888, *32 (Apr. 22, 2002).

{¶ 51} After reviewing the state's comments during closing argument in their entirety, and given the wide latitude afforded to the prosecution on rebuttal, we conclude defense counsel's failure to object was not indicative of deficient counsel. As the Ohio Supreme Court has explained, experienced attorneys understand that an objection during trial could be a detriment to their client, therefore, to find error in any single failure to object must be so prejudicial as to essentially default the case to the prosecution or counsel must have so consistently failed to object—despite clear reason to do so—that the failure cannot be

attributed to reasonable strategy. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404,
¶ 14. As a result, in order to prevail on her ineffective assistance of counsel claim, King
must show that the failure to object was a substantial violation of defense counsel's
essential duties to her. *Id.* at ¶ 139, citing *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988).
King has failed to do so here. Rather, even if the comments made by the state were
objectionable, there is no evidence in the record that such comments had any influence on
the jury's verdicts or prejudiced King in any way.

{¶ 52} King also argues her counsel should have objected to the state's comment
during closing arguments that the grand jury indicted King, thereby implicitly suggesting the
grand jury had "already signed off on this case in a positive sense." A review of the
transcript reveals the prosecutor stated the following:

> We told you that this all began as - - began with the filing of an
> indictment, an indictment that citizens of Clermont County
> rendered. Here we are today, and the State of Ohio is asking
> you to find [King] guilty for all three counts on that indictment.

Isolated comments by a prosecutor are not to be taken out of context and given their most
damaging meaning. *State v. Hill*, 75 Ohio St.3d 195, 204 (1996). Rather, closing arguments
must be viewed in their entirety to determine whether the disputed remarks were unfairly
prejudicial. *State v. Moritz*, 63 Ohio St.2d 150, 157 (1980). When reviewing the state's
comments in their entirety, we fail to see any prejudicial or objectionable misconduct on
behalf of the prosecutor. Specifically, although the prosecutor mentioned King's indictment,
it did not imply that the indictment was akin to guilt and the jury was instructed thereafter
not to consider King's indictment for any purpose. As such, even if the failure to object
amounted to deficient performance, King has failed to establish she suffered any prejudice
as a result.

{¶ 53} Lastly, King argues her counsel was deficient in failing to file an affidavit of

indigency. Because of her counsel's failure in this regard, King claims she was unable to avoid the mandatory fine of $7,500.

{¶ 54} R.C. 2929.18(B)(1) establishes a procedure for avoiding imposition of mandatory fines applicable to certain felony drug offenses. That section provides in pertinent part:

> If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

R.C. 2929.19(B)(1). If, on the other hand, an affidavit of indigency is not filed, the court "shall impose upon the offender a mandatory fine." *State v. Moore*, 135 Ohio St.3d 151, 2012-Ohio-5479, ¶ 13.

{¶ 55} It is undisputed that King's counsel did not file an affidavit of indigency, however, trial counsel's failure to file such an affidavit "only establishes ineffective assistance of counsel when the record shows a reasonable probability that the trial court would have found the defendant indigent." *State v. Ison*, 5th Dist. Richland No. 15CA17, 2016-Ohio-1528, ¶ 37, citing *State v. Foreman*, 3rd Dist. Hancock No. 5-07-17, 2008-Ohio-4408, ¶ 18; *see also State v. Gore*, 6th Dist. Lucas No. L-05-1242, 2006-Ohio-5622, ¶ 14.

{¶ 56} In considering whether a "reasonable probability" exists that a trial court would have found a defendant indigent to avoid having to pay a mandatory fine, courts have "considered factors such as age, criminal record, employment history, ability to post bond, ability to retain counsel for trial, and the untimely affidavit of indigence[.]" *Foreman* at ¶ 19, citing *State v. Howard*, 2d Dist. Montgomery No. 21678, 2007-Ohio-3582, ¶ 16.

{¶ 57} After a review of the record, including the presentence-investigative report, we find no indication in this record that King would have been found indigent. The record

reflects King was 52 years old at the time of sentencing. Although King was unemployed at the time of the incident, she began her most recent employment as a "handyman/sub-contracting" the month prior to the instant offense and was "working in the kitchen" while incarcerated. Prior to that employment, the presentence-investigative report indicates King had maintained employment between December 2020 and June 2021. As noted above, King has a lengthy criminal record but reported being in fair health and that she had been sober for approximately 15 months at the time of sentencing. The record also indicates King posted bond in the amount of $1,250 and was found in possession of more than $700 at the time of her arrest. Additionally, although King was initially represented by an appointed public defender, King retained private counsel before trial.

{¶ 58} In light of these facts, we find no reasonable probability exists that King would have been found to be indigent and avoided the mandatory fine. King has, therefore, failed to demonstrate ineffective assistance of counsel based upon counsel's failure to file an affidavit of indigency.

{¶ 59} Based on all the foregoing, we conclude that King has failed to show that her counsel's performance was deficient or that she suffered any prejudice as a result of the alleged deficiencies. Accordingly, we overrule King's fourth assignment of error.

{¶ 60} Finding no merit to any of King's arguments raised on appeal, we affirm the judgment of the trial court.

{¶ 61} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.